(No. 35598.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM BENDER, Plaintiff in Error.

*Opinion filed September 29, 1960.*

D. A. McGrady, of Gillespie, for plaintiff in error.

Grenville Beardsley, Attorney General, of Springfield, and Paul C. Verticchio, State's Attorney, of Carlinville, (Fred G. Leach and Jim D. Keehner, Assistant Attorneys General, of counsel,) for the People.

Mr. Justice Klingbiel delivered the opinion of the court:

William Bender, referred to herein as defendant, was indicted by the grand jury of Macoupin County for the crime of armed robbery in an indictment which charged a prior conviction of a felony. Counsel was appointed for him and this attorney filed a petition requesting a sanity hearing. The trial judge appointed two psychiatrists to examine defendant and following their examination a jury was impaneled and the sanity hearing was held. The jury returned a verdict finding that defendant was sane, and the case then proceeded to trial by a jury, resulting in a verdict of guilty upon which judgment was entered. Following his conviction and sentence, defendant filed a petition under the Post-Conviction Hearing Act. (Ill. Rev. Stat. 1953, pars. 826 *et seq.*) A hearing was held and the trial court denied any relief in the post-conviction proceeding. Defendant then applied for a writ of error from this court to review the post-conviction judgment and also sought a writ of error under Rule 65—1. We granted both writs of error and consolidated them for disposition.

Several errors are assigned, but in the view which we take of the case, we find it necessary to consider only one of these assignments. Defendant contends that the procedure at the sanity hearing was so erroneous and irregular that he was deprived of due process of law. It is fundamental that a person charged with crime may not be tried while he is insane and that if an insane person is placed on trial it is a violation of due process of law. (*People* v.

*Burson,* 11 Ill.2d 360; *People* v. *Reeves,* 412 Ill. 555). This principle was well recognized by the common law and has been implemented by the legislature, which has provided that an insane person shall not be tried for an offense during the continuance of his insanity. The statute in question provides for the impaneling of a jury to try the question whether the accused is insane at the time of the hearing. (Ill. Rev. Stat. 1953, chap. 38, par. 593.) The sanity hearing which is thus prescribed is no empty formality, but is designed to preserve the constitutional right of a defendant not to be placed on trial while he is insane. It is, therefore, of great importance that such a hearing should be free from prejudicial error and that the hearing proceed in accordance with proper rules of evidence and that the jury be properly instructed as to the law. In *People* v. *Finn,* 17 Ill.2d 614, the defendant was indicted for the crime of burglary. Prior to trial, counsel for defendant petitioned for a sanity hearing. The petition was granted and a sanity hearing was held resulting in a verdict that the defendant was sane. He was thereafter tried by jury on the criminal charge, found guilty, and sentenced to the penitentiary for life as an habitual criminal. We held that certain remarks of the trial judge at the sanity hearing were so prejudicial that defendant was deprived of his right to a fair and impartial hearing and was deprived of due process of law. In *People* v. *Scott,* 326 Ill. 327, we also held that prejudicial errors at a sanity hearing deprived the defendant of due process of law.

In the present case, the two psychiatrists who had been appointed by the court and who testified at the sanity hearing both expressed an opinion that the defendant was insane at the time of the hearing. One of these psychiatrists had specialized in the field of mental illness for more than 35 years and had charge of the mental cases in the prison system of Illinois. In the course of his practice he examined more than 1000 prison inmates each year. The

other psychiatrist had specialized in nervous and mental diseases for more than 20 years and was superintendent of the Alton State Hospital. Opposed to the opinions of the two psychiatrists were the opinions of three lay witnesses, a jailer, the sheriff and a deputy sheriff. They all testified that they had talked to defendant and had observed him and that they were of the opinion that he was sane.

Dr. Groves B. Smith, one of the psychiatrists, testified that he had examined defendant and had examined his records, the defendant having previously been confined in the penitentiary. He had a lengthy interview with defendant at the jail to evaluate defendant's background and determine his attitude, his philosophies, and his manner of accepting his present situation. He found that defendant was a person of superior intelligence but that at the time of the examination his train of thought and manner clearly was not in conformance with his intelligence and background. He stated that the defendant was unable to get his mind on the questions which were asked him and could not recall any of the events leading up to the crime with which he was charged and could give no idea as to how he got in jail. Defendant's history showed that he was quite depressed and had twice attempted to commit suicide. The doctor was of the opinion that defendant was attempting to escape the reality of finding himself in jail and was not in a position to give any pertinent details which would have a bearing on his ability to stand trial. The doctor was of the opinion that defendant was the victim of a progressing condition of hysterical amnesia and was not in a position to confer with his counsel and plan an adequate defense. The doctor repeatedly expressed his opinion that the defendant was mentally ill, both from a medical and from a legal standpoint, and that he was unable to co-operate with his counsel. On cross-examination he stated that he had given the defendant the benefit of the doubt, and explained that his reason for doing so, in part, was because, if he were

not given this benefit, in a year or two he could claim a denial of his constitutional rights. Following this statement by the doctor the State's Attorney asked the doctor whether he thought that it was fair to the People of the State of Illinois to bend over backwards in this case. The doctor replied that he did think so because of the enactment of the Post-Conviction Hearing Act. The State's Attorney stated that he did not see why that applied because the defendant was having a sanity hearing at that time. He also told the witness that if defendant was found sane at that sanity hearing he was not entitled to another hearing on the same proposition, and that he did not see why the legal end of it should enter into the doctor's decision. The doctor stated that it was his impression that the sanity hearing was an attempt on the part of the State to get the actual picture, and he stated that the actual picture at the time was that the defendant was in a state of hysterical amnesia which blocked off his abilities to confer with counsel. He stated that there was a possibility that the jurors might find that the man was sane but that certainly was not his opinion. The State's Attorney then stated that if the doctor would testify that defendant was perfectly sane the defendant would be brought to trial and it would not make any difference so far as any of the defendant's future legal rights were concerned. The doctor replied that it might lay a foundation for future legal attempts and that he was giving defendant the benefit of the doubt to take away any possibility of his making use of further remedies. The State's Attorney replied that he did not see why the defendant was entitled to the benefit of any doubt, that the State of Illinois had an interest in the matter, too, and that it would be a pretty serious matter that the State of Illinois would have to follow, if they followed the doctor's recommendations. The State's Attorney then asked the doctor if he understood that if the man was

found insane he would be confined in a mental institution and then he would be entitled to another jury trial on the issue of whether he had recovered his sanity and that after that he would be tried on the original charge that started the whole thing. The doctor replied that he realized all of that but that his opinion was still that the man could not properly evaluate facts and could not co-operate with his counsel. While it is true that the doctor first injected the issue of the Post-Conviction Hearing Act into the sanity hearing, we are of the opinion that the trial judge at that hearing erred in permitting the lengthy and argumentative cross-examination on that issue. A reading of the record shows that the hearing turned from a consideration of the defendant's sanity from a medical view point to an argument between the State's Attorney and the doctor on legal issues, the availability of the Post-Conviction Hearing Act, and the costs and expenses that the State would be put to if the defendant were found to be insane at the time of the hearing. The entire tenor of the State's Attorney's cross-examination was that it would be a waste of time and a waste of money to find the defendant insane because the State would then be put to the expense of having another sanity hearing to determine whether the defendant had recovered his sanity and then would be put to the expense of trying him again. In other words, the State's Attorney argued with the doctor that the State might just as well be permitted to try the defendant immediately and get it over with.

In addition to the erroneous and prejudicial cross-examination, a further error was committed at the hearing. At the request of the State the court gave the following instruction:

"The Court instructs the jury that under the law, every person is presumed to be sane until proven otherwise, and you are instructed that in this case, the burden of proof

on the issue of the present sanity of this defendant rests on the defendant, William Bender, at least to the extent of overcoming the presumption of sanity."

At the request of the defendant the court gave the following instructions:

"The Court instructs the jury that the insanity of the defendant is not required to be proven beyond a reasonable doubt but is only required to be proven by a preponderance of the evidence.

"The court instructs the jury that the burden of proving insanity is upon the defendant, but if the evidence, when all considered, leaves a reasonable doubt of the defendant's sanity, he should have the benefit of the doubt."

Neither the briefs of counsel nor our research have disclosed any case in which this court has squarely passed upon the question of the burden of proof in a pretrial sanity hearing, although it is well settled that where the defense of insanity is raised at the trial the burden is upon the State to prove beyond a reasonable doubt that the defendant is sane. (*People* v. *Skeoch,* 408 Ill. 276; *People* v. *Cochran,* 313 Ill. 508.) In *People* v. *Saylor,* 319 Ill. 205, the defense of insanity was raised at the trial. One of the instructions given by the court stated in part as follows: "The court instructs the jury that every person accused of crime is presumed to be sane until the contrary is shown." This language is substantially identical to the language of the instruction in the present case which was given at the request of the State. In the *Saylor case* we said, page 211: "This instruction is erroneous. The law does not presume every person accused of crime to be sane until the contrary is shown. The only effect of the presumption of sanity is to require the introduction of evidence tending to prove insanity. When that is done the presumption no longer prevails. It does not continue until the contrary is shown. The question of sanity or insanity is then to be determined from the whole evidence, without any reference to the

presumption. The rule as stated in the instruction in effect imposes the burden of proof on the defendant. It is not essential that insanity should be shown. All that is required of the defendant is evidence sufficient to raise a reasonable doubt of sanity. The presumption of sanity can not be considered by the jury in determining whether the defendant is sane or insane. Whenever evidence is introduced tending to show that the accused was insane at the time of committing the act charged as a crime, the burden devolves upon the State to prove beyond a reasonable doubt, regardless of the presumption, that at the time of the commission of the act the accused was sane."

There is one important distinction between a pretrial sanity hearing and a criminal trial. Such a hearing is a preliminary proceeding, separate and apart from the trial of the criminal charge. (*People* v. *Cornelius,* 392 Ill. 599.) In such proceeding the issue of the accused's sanity is to be determined by a preponderance of the evidence. The instructions in the present case correctly state that the issue of insanity was to be resolved by a preponderance of the evidence. However, these instructions informed the jury that the burden of proving defendant's insanity rested upon the defendant. As we have observed, in the trial of a criminal case the burden is upon the State to prove defendant's sanity. We see no reason why the burden of proof should shift to the defendant in a pretrial sanity hearing. The test of sanity at such a hearing is whether the defendant understands the nature of the charges against him and whether he can co-operate with his counsel and conduct his defense in a rational and reasonable manner. (*People* v. *Burson,* 11 Ill.2d 360.) Let us assume that defendant is in fact unable to co-operate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically

or legally, of sustaining the burden of proof. Our views on this subject find support in other jurisdictions. For example, in *Jordan* v. *State,* 124 Tenn. 81, 135 S.W. 327, the court instructed the jury, in substance, that if the presumption of sanity was rebutted, the burden was upon the State to establish by a preponderance of the evidence that the defendant was sane. The court refused to instruct the jury that the burden of proof was upon the State to show the sanity of the defendant beyond a reasonable doubt. The Supreme Court of Tennessee affirmed the judgment of conviction and held that the instruction which had been given correctly stated the law, both as to the burden of proof and the quantum of proof. The instructions in the present case impose upon the defendant the burden of establishing his insanity. They also invite the jury to act upon the presumption of sanity. These instructions were erroneous. The State in its brief concedes that the State's instruction was "not without infirmity" but contends that when read with the other instructions it was not erroneous. We are unable to perceive how the State's instruction could possibly be cured by other instructions equally erroneous. The State further contends that some of the erroneous instructions were given at the request of defendant and that he is therefore in no position to complain. While such a rule is normally applicable in cases involving mere error, it will not operate to deprive an accused of his constitutional right to due process of law. (Cf. *People* v. *Burson,* 11 Ill.2d 360, 370.) When the State, the defense, and the court, all proceeded on an entirely erroneous belief that the burden of establishing insanity rested upon the defendant, it was impossible for the defendant to receive a fair and impartial trial according to the law of this State.

The erroneous and prejudicial cross-examination and the erroneous instructions, which resulted in the entire case being tried upon the wrong theory, deprived defendant of

due process of law. The judgment of the trial court in the post-conviction case is reversed. The judgment of conviction is reversed and the cause is remanded to the circuit court of Macoupin County for a new trial in accordance with the views expressed herein.

*Reversed and remanded.*