THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM HUBERT, JR., Defendant-Appellant.
First District (1st Division)   No. 62522

Opinion filed August 1, 1977.

Elliott T. Price, of Chicago (Michael J. Goldstein, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Myra J. Brown, and Leonard J. Wojtecki, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE BUA delivered the opinion of the court:

In a jury trial in the Circuit Court of Cook County, the defendant was convicted on one count of murder (Ill. Rev. Stat. 1969, ch. 38, par. 9—1) and two counts of aggravated battery (Ill. Rev. Stat. 1969, ch. 38, par. 12—4(b)(1)). Prior to sentencing, the trial judge, sitting without a jury, held a hearing on the defendant's fitness. It was found that the defendant had been fit at the time of his trial and was fit for sentencing. The court imposed a sentence of imprisonment for a term of from 15 to 45 years. At the fitness hearing, however, the trial court allocated to the defendant the ultimate burden of proving his own unfitness, as provided by section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(i)). We take notice of this plain constitutional error and, accordingly, reverse and remand for a new trial.

On April 17, 1971, the defendant shot and killed Prince Sledge in a Chicago tavern known as the Seaway Lounge. Two other individuals present in the tavern, Vannie Lee Robinson and Sidney Fitzgerald, also suffered gunshot wounds. The defendant was indicted for the murder of Sledge, and for two counts of aggravated battery against each of the two other victims. A jury trial began on October 21, 1974.

On October 23, 1974, the jury found the defendant guilty of the murder of Prince Sledge, and of one count of aggravated battery against each of the two other victims. Judgments were entered on the verdicts.

At the request of defense counsel, on November 21, 1974, the court ordered a behavior clinic examination to determine the defendant's fitness for sentencing. This examination was performed by Dr. Edward Kelleher, director of the Psychiatric Institute of the Circuit Court of Cook County. The report of this examination, filed December 12, 1974, indicated Dr. Kelleher's conclusion that the defendant was not fit for sentencing, and also suggested that the defendant had not been fit at the time of his trial.

Pursuant to an extension of time granted by the court, the defendant's written motion for a new trial was filed on December 30, 1974. Among other grounds, this motion alleged the defendant's unfitness at the time of his trial, making reference to Dr. Kelleher's report. In connection with this allegation, defense counsel asked the court to order a second examination by Dr. Kelleher, specifically for the purpose of determining the defendant's fitness at the time of his trial. This request was granted. In addition, the court granted the State's request that the defendant also be

examined by Dr. Clifton Rhead of the Illinois State Psychiatric Institute. Both examinations were carried out in January 1975, and reports were filed with the court.

■■ On March 6, 1975, a hearing was held before the trial judge, sitting without a jury, on the issues of the defendant's fitness at trial[1] and for sentencing. The only witnesses to testify at the hearing were Dr. Kelleher and Dr. Rhead. The defendant offered the testimony of Dr. Kelleher, who was of the opinion that the defendant had been unfit at the time of his trial and was unfit for sentencing. Dr. Rhead, however, testifying for the State, gave an opposing opinion. The court properly took notice of the trial proceedings.

At the conclusion of the fitness hearing, the trial judge found that the defendant had been fit for trial and was fit for sentencing. Other grounds raised in the defendant's motion for a new trial were also denied. After a hearing on aggravation and mitigation, the court imposed a sentence of imprisonment for 15 to 45 years.

The defendant's first contention on appeal is that the court erred in finding him fit *for trial* because he had established his unfitness by a preponderance of the evidence.

Section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(i)), in effect at the time of the defendant's fitness hearing, provided that where, as here, the defendant raised the issue of his fitness for trial, the burden was on him to prove his unfitness by a preponderance of the evidence.[2] At trial, the defendant did not object to the allocation of the burden of proof under Section 5—2—1(i). Nor did he do so in his brief or argument on appeal, but rather, as indicated, acknowledged his burden under that provision and argued that he had in fact proved his unfitness. However, while this case was awaiting decision on appeal, the Illinois Supreme Court, in *People v. McCullum* (1977), 66 Ill. 2d 306, 313-14, 362 N.E.2d 307, 310-11, found section 5—2—1(i) to be unconstitutional insofar as it placed the ultimate burden of proving unfitness on the defendant, saying:

> "The United States Supreme Court has also recognized the inherent legal disability of an accused, alleged to be unfit, when it stated: '[I]t is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial.' (*Pate v. Robinson* (1966), 383 U.S. 375, 384, 15 L. Ed. 2d 815, 821, 86 S. Ct. 836.) It is equally erroneous to argue that a defendant who has

---

[1] A hearing on the defendant's fitness *for trial*, where necessary, is normally conducted prior to or during the trial. (See Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(b).) However, it is within the discretion of the trial judge to hold such a hearing after the trial itself is over. (*People v. Morgan* (1975), 31 Ill. App. 3d 882, 335 N.E.2d 139.)

raised a *bona fide* doubt as to his fitness to stand trial can be presumed to possess the intelligence and understanding necessary to assist his counsel in gathering, coordinating, and presenting facts required to prove his unfitness. Though the legislature has the authority to determine the allocation of the burden of producing evidence and the burden of persuasion, it may not allocate these burdens in a manner that 'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Speiser v. Randall* (1958), 357 U.S. 513, 523, 2 L. Ed. 2d 1460, 1471, 78 S. Ct. 1332.

The concept of fitness to stand trial is grounded on the notion that it is fundamental to an adversary system of justice. (*Drope v. Missouri* (1975), 420 U.S. 162, 171-72, 43 L. Ed. 2d 103, 113, 95 S. Ct. 896.) Fundamental fairness dictates that, where a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the State, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial. (See *United States v. DiGilio* (3d Cir. 1976), 538 F.2d 972, 988.) We find section 5—2—1(i) to be unconstitutional to the extent that it places on the defendant the ultimate burden of proving unfitness to stand trial."

Under these circumstances, we think it appropriate that we grant the defendant a new trial.

■■ The rule stated in *McCullum*—that the defendant, as a matter of due process, may not be made to bear the burden of proving his own unfitness for trial—is clearly the law applicable to the present case. It is true that where a decision sets forth a *new* constitutional rule of criminal law or procedure that rule will not be applied, on direct or collateral review, to transactions which occurred prior to its enunciation unless it is found, upon consideration of the particular circumstances, to warrant "retroactive" application. This is the doctrine developed by the progeny of *Linkletter v. Walker* (1965), 318 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731 (see generally Beytagh, *Ten Years of Non-Retroactivity: A Critique and Proposal*, 61 Va. L. Rev. 1557 (1975)). *McCullum*, however, set forth no new rule. Section 5—2—1(i) became effective on January 1, 1973. Before that time there was clear and abundant precedent to the effect that due process did not permit placing on the defendant the burden of proving his own unfitness. As the court said in *McCullum*:

"Prior to the enactment of section 5—2—1(i), this court consistently held that once evidence indicating unfitness was brought by the defense, the burden devolved upon the State to

---

[2] Section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(i)) provides:

"(i) The burden of proving the defendant is not fit is on the defendant if he raises the question and on the State if the State or the court raises the question."

establish by a preponderance of the evidence that defendant was fit to stand trial. (*People v. Thompson* (1967), 36 Ill. 2d 332, 334-35; *People v. McKinstray* (1964), 30 Ill. 2d 611, 616-17; *People v. Bedford* (1964), 31 Ill. 2d 227, 228-29; *People v. Bender* (1960), 20 Ill. 2d 45, 53-54.) This court has held that erroneous instructions with regard to the allocation of the burden of proof constituted a denial of due process. (*People v. Thompson* (1967), 36 Ill. 2d 332, 334-35; *People v. Bedford* (1964), 31 Ill. 2d 227, 228-29; *People v. Bender* (1960), 20 Ill. 2d 45, 53-54.)" (66 Ill. 2d 306, 312-13.) The cases cited by the court, both on their facts and by way of stating the general principle involved, left no constitutional basis whatsoever for placing the burden of proof on the defendant, even where he himself raised the fitness issue. Thus, in reaffirming the letter and spirit of those cases, the court in *McCullum* effectively established that section 5—2—1(i), insofar as it was inconsistent, was in a true sense void *ab initio*. That is, rather than falling victim to a *change* in settled constitutional principles, section 5—2—1(i) at all times stood contra to them. The case might well be different if the question decided in *McCullum* was one of first impression before our supreme court. (Compare *United States v. Peltier* (1975), 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313; *Gosa v. Mayden* (1973), 413 U.S. 665, 37 L. Ed. 2d 873, 93 S. Ct. 2926.) But we cannot escape the fact that *McCullum*, rather than changing the law in a manner that would necessitate a retroactivity/prospectivity analysis,[3] merely *reaffirmed* what the law had always been.

■■■ Hence, it follows that the defendant's due process rights were violated. In the absence of any indication to the contrary, we must assume that the trial judge, in allocating the burden of proof on fitness, followed the clear direction of section 5—2—1(i). A trial court may not ignore a statute until its validity is passed on by the Illinois Supreme Court; if the trial court does not itself declare the statute invalid, then it is the court's duty to follow the mandate of the statute until its invalidity has been determined. (*People v. Papas* (1942), 381 Ill. 90, 44 N.E.2d 896.) We think the reason for this rule is to insure that the validity of a statute will, if necessary, be litigated and settled. This is especially important where, as here, a statute seems quite clearly to run contra to established constitutional principles. Moreover, our assumption is confirmed by the fact that the trial court, in conducting the fitness hearing, made the defendant proceed first, both in offering evidence and in making

---

[3] We do not mean by this to suggest any view as to whether, under the principles developed by the United States Supreme Court in those cases following *Linkletter v. Walker*, the rule enunciated in *McCullum*, if it was in fact a "new" rule, would warrant retroactive application.

arguments. It is well established that the misallocation of the burden of proof on fitness by way of a jury instruction constitutes a denial of due process. (*People v. McCullum; People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97.) We do not hesitate to apply this principle to the case where the trial court, in deciding the issue of fitness without a jury, misallocates that burden. A court of review may not properly speculate as to what result the trier of fact, whether a judge or jury, would have reached had the burden of proof been allocated differently. This is especially true where, as here, the record reveals that the evidence presented a close question as to the defendant's fitness. See *United States v. DiGilio* (3d Cir. 1976), 538 F.2d 972.

■■■ Further, the fact that the defendant has not attacked section 5—2—1(i) should not prevent him from gaining the benefit of its invalidity. General principles of waiver need not be applied where there has been a misallocation of the burden of proof at a fitness hearing. (See, *e.g., People v. McKinstray* (1964), 30 Ill. 2d 611, 616, 198 N.E.2d 829, 832; *People v. Bender* (1960), 20 Ill. 2d 45, 169 N.E.2d 328.) As the court explained in *McKinstray*:

> " 'We recognize that counsel for defendant did not present or argue this point; and that the general rule is that where a question is not raised or reserved in the trial court, or where, though raised in the lower court, it is not urged or argued on appeal, it will not be considered and will be deemed to have been waived. However, this is a rule of administration and not of jurisdiction or power, and it will not operate to deprive an accused of his constitutional rights of due process. "The court may, as a matter of grace, in a case involving deprivation of life or liberty, take notice of errors appearing upon the record which deprived the accused of substantial means of enjoying a fair and impartial trial, although no exceptions were preserved or the question is imperfectly presented." [Citations.]' " (30 Ill. 2d 611, 616, 198 N.E.2d 829, 832.)

And see generally Ill. Rev. Stat. 1975, ch. 110A, par. 615(a) (failure to properly raise an issue at trial); *People v. Henderson* (1970), 119 Ill. App. 2d 403, 256 N.E.2d 84; *People v. Torello* (1969), 109 Ill. App. 2d 433, 248 N.E.2d 725 (failure to properly raise an issue on appeal).

Nor can it be argued that the error in the present case was not sufficiently clear on the record to warrant our notice. We need not be able to say with absolute assurance that the trial judge misallocated the burden of proof. It is sufficient for our purposes that the trial judge had a duty to follow the directive of section 5—2—1(i), and that the record is wholly consistent with and tends in a substantial manner to confirm the notion that he in fact did so. The situation is a reality no different from that in

which the jury is informed by instruction of its duty to allocate the burden of proof to the defendant. In such a case the court in *People v. Thompson* (1967), 36 Ill. 2d 332, 223 N.E.2d 97, said:

> "In view of the fact that the jury *may have* considered the entire pretrial sanity hearing upon an erroneous theory, we hold defendant was deprived of due process of law. We have previously held that the waiver rule will not operate, at least where the error is of the substantial magnitude manifested here, to deprive a defendant of his constitutional right to due process. (*People v. Bedford*, 31 Ill. 2d 227; *People v. Bender*, 20 Ill. 2d at p. 54; *People v. Burson*, 11 Ill. 2d 360, 370.) The determination that defendant was competent to stand trial must therefore be reversed. *People v. Hamby*, 32 Ill. 2d 291, 294, and cases there cited." (Emphasis added.) 36 Ill. 2d 332, 334-35, 223 N.E.2d 97, 98.

We find, then, that the defendant's fitness hearing was constitutionally invalid. Further, we think that in view of the difficulties inherent in conducting a *nunc pro tunc* redetermination of the defendant's fitness at trial the only way to adequately protect his due process rights is to afford him a new trial (see *People v. Thompson*; see also *Pate v. Robinson* (1966), 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836), provided, of course, that he is fit for retrial.

In view of the above, we need not address ourselves to the other contentions raised by the defendant.

The judgment of the Circuit Court of Cook County is reversed, and the case is remanded for a new trial to be conducted in a manner consistent with the views expressed herein.

Reversed and remanded.

GOLDBERG, P. J., and McGLOON, J., concur.