THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOHN WILLIAM BILYEW, Defendant-Appellant.

Fifth District   No. 76-199

Opinion filed November 23, 1977.

Michael J. Rosborough and Randy E. Blue, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Robert H. Howerton, State's Attorney, of Marion (Bruce D. Irish and Raymond F. Buckley, Jr., both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

On June 7, 1974, defendant John William Bilyew was charged by indictment with rape, murder and concealment of the homicidal death of Frances Buckner. Pursuant to a motion by defense counsel four experts were appointed by the court to examine defendant and a competency hearing was held on November 20 and 21, 1974. On December 13, 1974, the circuit court of Williamson County determined that the defendant was competent to stand trial. Subsequently the defendant withdrew his pleas of not guilty to each count of the indictment and entered guilty pleas to the murder and concealment of a homicidal death charge. Upon accepting these pleas the court sentenced the defendant to a term of 50 to 100 years imprisonment for the murder offense, and a term of 1 to 3 years for the concealment of a homicidal death offense. The court provided that the sentences run consecutively. This appeal ensued.

The testimony adduced in support of the guilty pleas revealed that at approximately 6 p.m. on June 1, 1974, the defendant was sitting on the front porch of his apartment at 613½ East Main Street, Marion, Illinois, when he observed the deceased walking down the road. The defendant approached Ms. Buckner and requested her to join him on the porch. As they reached his yard defendant asked the deceased to have sex with him. When the deceased refused the defendant became extremely angry and choked the young woman thereby causing her death. In a statement made to the police the defendant explained that he undressed the woman, wrapped her in a gold-colored blanket which he had secured from his

apartment and then placed the body in an opening under a nearby house. The following day defendant burned the victim's clothing in his trash barrel. The defendant stated that on Tuesday, June 4, 1974 a "voice" instructed him to reveal the murder. At approximately 11 p.m. the defendant removed the victim's body from its hiding place and dragged it into the street, throwing a rock through the window of a nearby house to attract attention. By way of corroborating evidence the gold-colored blanket in which the body had been wrapped was recovered at defendant's direction from a nearby shed, some of the victim's charred clothing was found in defendant's trash barrel, fibers from the defendant's trousers and from a rug located in defendant's apartment were retrieved from the victim's hand and fingernails, and some strands of hair caught on a screen in the hiding place beneath the house matched the victim's hair.

The court granted the competency hearing upon learning of prior sex related offenses committed by the defendant and upon an examination of the reports filed by the court-appointed experts in the case. During the competency hearing three expert witnesses testified regarding their personal interviews with the defendant. In addition, the deposition of Dr. Norris, a psychiatrist and professor-chairman of the Department of Psychiatry at Southern Illinois University, was received into evidence. Dr. Norris testified that being apprised of the statutory definition of fitness to stand trial it was his opinion that the defendant would not be able to assist in his own defense in that he understood the nature and purpose of the proceedings only in a most superficial fashion. Much of the expert testimony focused upon the defendant's low intelligence quotient which according to some tests was as low as 41 and, according to another, as high as 66. Dr. Norris concluded that the defendant had little appreciation for geography, time, or the seriousness of his actions. He stated that the defendant would comprehend the proceedings "the same way as a six year old would understand."

Dr. Rubin, a psychologist who specializes in the study of sexual deviancy, testified that the defendant was unable to separate fact from fantasy and this inability would preclude him from effectively communicating with counsel in preparation of a viable defense. Dr. Rubin stated that the defendant could be easily manipulated and that during the interview each time he attempted to influence defendant's response, he was successful to the point of even reversing an initial response. On this basis Dr. Rubin felt that defendant would be unable to give accurate information to his attorneys. The following colloquy illustrates his reasoning:

"STATE'S ATTY: All right. What you're saying then is that counsel should take care to be most articulate with the defendant?

DR. RUBIN: I don't think that that would be enough. As

articulate as you might be, as much as you might explain it, the client is going to respond in the way that he thinks is most appropriate, that you think most appropriate for him to respond; notwithstanding what might have occurred what [sic] when he— that the individual could have responded.

Q. And for that reason you say that even though he can communicate with counsel that he is unable to assist in his own defense?

A. Yes, sir."

Dr. Rader, a clinical psychologist, and Dr. Horecker, a psychiatrist, both testified that in their opinion defendant was fit to stand trial. Dr. Rader pointed out, however, that due to his diminished intelligence, a memory impairment, and a "rather severe deficiency and ability to understand and cope with situations," defendant only understood the basic nature of the proceedings and would only be able to assist counsel to a lesser degree than a normal person. Neither Dr. Rader nor Dr. Horecker found the defendant was unable to distinguish fact from fantasy. In addition, Dr. Horecker testified that he considered defendant to be logical, coherent, and able to make judgments regarding suggestions of his counsel before and during trial.

Several lay witnesses were also heard as to the defendant's behavior while incarcerated in the Williamson County jail. Upon this evidence the court determined that defendant was competent to stand trial and accepted the pleas negotiated in this cause.

Defendant urges on appeal that he was found competent pursuant to a statute which places the burden of persuasion upon him and thus denies him due process of law. The statute in question is section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i) and (j)) which provides:

"(i) The burden of proving the defendant is not fit is on the defendant if he raises the question and on the State if the State or the court raises the question.

(j) The party raising the question has the burden of going forward with the evidence. If the court raises the question, the State shall have the burden of going forward with the evidence. At a fitness hearing held at the instance of the court, the court may call and examine witnesses on the question of fitness."

■■ Before reaching the merits of defendant's contention, we will consider two preliminary questions raised by the State in its brief. First, it is alleged that the evidence clearly established that the defendant was competent to stand trial; thus, existence of the statute is immaterial. Second, the State argues that the court did not expressly rely upon the statutory assignment of the burden of proof; therefore, the burden

allocation had no effect upon the court's decision. We find these arguments to be without merit. In the first instance, two of the four experts stated directly that in their opinion defendant was incompetent. We cannot ignore this testimony and find that competence was clearly established. Moreover, this case is an ideal example of a situation where the allocation of the burden of proof would be most likely to influence the court's decision for the experts were equally divided on the ultimate issue. Thus, we feel it is insignificant that the court did not articulate that its decision turned on which party bore the burden. Rejecting a similar argument, the court in *People v. Hubert*, 51 Ill. App. 3d 394, 366 N.E.2d 909, a scholarly opinion by Justice Bua of the First District, stated:

> "We need not be able to say with absolute assurance that the trial judge misallocated the burden of proof. It is sufficient for our purposes that the trial judge had a duty to follow the directive of Section 5—2—1(i), and that the record is wholly consistent with and tends in a substantial manner to confirm the notion that he in fact did so." (51 Ill. App. 3d 394, 399.)

See also *People v. Thompson*, 36 Ill. 2d 332, 223 N.E.2d 97.

■■ The defendant contends that two recent Illinois decisions control the outcome of this appeal. We agree. In *People v. Garlick*, 46 Ill. App. 3d 216, 360 N.E.2d 1121, we held that basic principles of fundamental fairness and common sense dictate this result. There we reviewed the legislative development of the current statute, emphasizing that prior to the 1973 revision courts had placed the burden of persuasion on the State, irrespective of the origin of the request for the hearing. We need not reiterate our analysis in that case except to quote again the wise pronouncement of the Illinois Supreme Court in *People v. Bender*, 20 Ill. 2d 45, 53, 169 N.E.2d 328:

> "Let us assume that defendant is in fact unable to cooperate with counsel and present his case in a rational manner. It would be a strange rule, indeed, to impose upon him the burden of proving his own incompetence, for the very disability which he would be seeking to prove renders him incapable, either logically or legally, of sustaining the burden of proof."

The supreme court in *People v. McCullum*, 66 Ill. 2d 306, 362 N.E.2d 307, likewise held this statute unconstitutional as a denial of due process. Following an analysis similar to that in *Garlick*, the supreme court concluded:

> "Fundamental fairness dictates that, where a defendant has raised a *bona fide* doubt as to his fitness to stand trial, the State, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial." (66 Ill. 2d 306, 314.)

Discussing the concept of "retroactive" application of *McCullum*, the

First District in *People v. Hubert,* 51 Ill. App. 3d 394, 366 N.E.2d 909, profoundly reasoned that the *McCullum* decision merely established that section 5—2—1(i) was actually void *ab initio.* That is to say, rather than necessitating retroactive application of the principles enunciated therein, the supreme court simply reaffirmed what the law had always been.

In spite of these decisions, the State argues that the recent U. S. Supreme Court opinion in *Patterson v. New York,* 432 U.S. 197, 53 L. Ed. 2d 281, 97 S. Ct. 2319 (1977), compels a contrary result. *Patterson* concerned the New York definition of second degree murder. That statute imposed upon the defendant the burden of proving by a preponderance of the evidence the affirmative defense that the defendant acted under extreme emotional disturbance. We note that the majority opinion as well as the dissent is couched in terms of culpability or excuse for the offense charged—not, as here, the ability of the defendant to understand the nature and purpose of the offense and to assist in his defense. These are totally different inquiries as we see it. (See *People v. Hinton,* 11 Ill. App. 3d 907, 297 N.E.2d 681.) Thus, neither the *Patterson* decision nor the case of *Leland v. State of Oregon,* 343 U.S. 790, 96 L. Ed. 1302, 72 S. Ct. 1002, also cited by the appellee, is apposite. We feel that nothing which was said in either *Patterson* or *Leland* detracts from the supreme court's declaration of the unconstitutionality of Illinois' allocation of the burden of proof in fitness to stand trial cases. Because of our disposition of this issue, we need not consider the State's allegation that the *Garlick* and *McCullum* decisions were merely interpretations of the Federal and not the State constitution.

Finally, the State argues that the defendant at a fitness hearing is little more than a statue and it is the defense counsel "who is the real controlling force in presenting the issues involved in making certain that the defendant is able to function within the context of the trial." To a certain extent this is true. Yet, we must not allow ourselves to become entangled in this vicious circle. While the defendant's unfitness to stand trial is partially measured by his inability to assist counsel in preparation of his defense, it encompasses a still greater disability. A lack of fitness is not always, as the State urges, an observable characteristic. It often involves the total inability to effectively communicate accurate information to counsel, whether that information relates to events pertinent at trial or events pertinent to a fitness hearing. Indeed, the supreme court in *People v. Bender,* 20 Ill. 2d 45, 49, 169 N.E.2d 328, noted that the defendant "was not in a position to give any pertinent details which would have a bearing on his ability to stand trial." The supreme court has decided the issue in the *McCullum* decision and we concur with its wisdom.

■■ The State has requested that the cause be remanded to the trial court for an explicit finding that it originally determined that the

defendant's fitness to stand trial was established by a preponderance of the evidence and to hold another fitness hearing only if the court did not so find by a preponderance. Such would be a useless act by this court. It is obvious from the record that the trial court found the defendant's fitness by a preponderance of the evidence, else no plea could have been taken. The State is in effect attempting to avoid a new fitness hearing which is mandated by a series of Illinois cases. (*People v. Hubert*, 51 Ill. App. 3d 394, 366 N.E.2d 909; *People v. Chambers*, 36 Ill. App. 3d 838, 345 N.E.2d 119; *People v. Thompson*, 36 Ill. 2d 332, 223 N.E.2d 97; *People v. Felder*, 127 Ill. App. 2d 404, 262 N.E.2d 289.) As stated in *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836:

> "But we have previously emphasized the difficulty of retrospectively determining an accused's competence to stand trial. [Citation.] The jury would not be able to observe the subject of their inquiry, and expert witnesses would have to testify solely from information contained in the printed record. That Robinson's hearing would be held six years after the fact aggravates these difficulties. This need for concurrent determination distinguishes the present case from Jackson v. Denno [citation] where we hold that on remand the State could discharge its constitutional obligation by giving the accused a separate hearing on the voluntariness of his confession." (383 U.S. 375, 387, 15 L. Ed. 2d 815, 823, 86 S. Ct. 836, 843.)

Here the retrospective determination would be made three years after the fact. Accordingly, we vacate the finding of fitness and all subsequent proceedings and remand the cause for a new hearing during which the proper burden must be imposed. Should the court again find the defendant fit to stand trial, the defendant must be afforded the opportunity to plead anew.

Reversed and remanded with directions.

CARTER, P. J., and EBERSPACHER, J., concur.