THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GENEVIEVE EDMONDS, Defendant-Appellant.

(No. 71-220;

Fifth District—November 9, 1973.

Kenneth L. Jones, Deputy Defender, of Mt. Vernon, (Robert E. Farrell, Assistant Appellate Defender, of counsel,) for appellant.

R. W. Griffith, Jr., State's Attorney, of Edwardsville, (John A. Beyer, of Circuit Attorney Project, and Bruce A. Brown, Senior Law Student, of counsel,) for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Genevieve Edmonds, defendant-appellant, pled guilty to the charge of voluntary manslaughter in the Circuit Court of Madison County and was sentenced to a minimum of one year and a maximum of ten years in the penitentiary. She now contends that the trial court committed reversible error by failing to determine that there was a factual basis for her plea prior to entering final judgment on her plea as required by Supreme Court Rule 402(c) (Ill. Rev. Stat., ch. 110A, par. 402), which provides:

> "(c) Determining Factual Basis for Plea. The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea."

■■ We emphasize at the outset that it is not necessary for the trial court to determine the factual basis prior to the acceptance of the plea to conform with Rule 402(c), but the rule clearly provides that it must be done prior to the entry of final judgment.

In 1969, the United States Supreme Court decided the case of *McCarthy v. United States*, 394 U.S. 459, and reversed defendant's conviction entered upon a plea of guilty, because the trial judge did not "personally inquire whether the defendant understood the nature of the charge" as required by Rule 11, Federal Rules of Criminal Procedure. (394 U.S. at 467.) Shortly thereafter the Illinois Supreme Court decided the case of *People v. Mims*, 42 Ill.2d 441, 248 N.E.2d 92. In *Mims* our Supreme Court stated:

> "That opinion [McCarthy] emphasizes the importance of personal inquiries addressed to the defendant to ascertain directly his understanding of the nature of the charge against him. And al-

though that decision was 'based solely' upon the Supreme Court's construction of Rule 11 of the Federal Rules of Criminal Procedure, the underlying reasons apply equally to Rule 401 [now Rule 402] of this court." 248 N.E.2d at 94.

Thus, *McCarthy,* and all the federal decisions interpreting Rule 11, are relevant to our present inquiry. The objectives of Rule 402 are exactly parallel with that sought to be accomplished by Rule 11. These objectives are: (1) To insure compliance with the *Boykin* requirements (*Boykin v. Alabama,* 395 U.S. 238 (1969)), and (2) to give viability to the plea agreement process and thus provide a reviewing court with a record containing an accurate and complete account of all relevant circumstances surrounding the guilty plea. Committee Comments to Rule 402, Ill. Rev. Stat., ch. 110A, par. 402.

The *McCarthy* case is very similar to the present situation. In *McCarthy* the defendant was charged with "wilfully and knowingly" attempting to evade certain tax payments. During the course of the proceedings the defendant had asserted that his failure to pay taxes was "not deliberate". The Supreme Court reversed the plea of guilty and said:

"\* \* \* [B]ecause a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses *an understanding of the law in relation to the facts.*" 394 U.S. 459, 466. (Emphasis supplied.)

"\* \* \* Rule 11 also requires the judge to satisfy himself that there is a factual basis for the plea. The judge must determine 'that the conduct which the defendant admits constitutes the offense charged in the indictment or information or an offense included therein to which the defendant has pleaded guilty.' Requiring this examination of the relation between the law and the acts the defendant admits having committed is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" 394 U.S. 459, 467.

"\* \* \* [I]t is certainly conceivable that he may have intended to acknowledge only that he in fact owed the government the money it claimed without necessarily admitting that he committed the crime charged; for that crime requires the very type of specific intent that he repeatedly disavowed \* \* \* since the specific acts of tax evasion do not appear of record, it is also possible if petitioner had been adequately informed he would

have concluded that he was actually guilty of one of two closely related lesser included offenses, which are mere misdemeanors." 394 U.S. 459, 471.

The record indicates that the following transpired during the process of accepting the plea of guilty from the defendant:

> "The Court: Do the people from their knowledge of the background of this case believe they can prove the elements of voluntary manslaughter?
>
> State's Attorney: Yes, your honor.
>
> The Court: You have witnesses available, you have exhibits and evidence available to you which you believe would convince the jury that the defendant was guilty beyond a reasonable doubt?
>
> State's Attorney: Yes, your honor.
>
> The Court: Mr. Hill, you have been representing the defendant and you know the case fairly well?
>
> Defense Counsel: Yes, sir, in one particular instance in this case there is a videotape confession wherein she does admit the killing and says some justification for it and that is the basis of the voluntary manslaughter plea.
>
> The Court: * * * Do you still persist in your plea of guilty?
>
> The Defendant: I do.
>
> The Court: You do?
>
> The Defendant: Yes."

The trial court did not listen to the video tape, but accepted the defendant's plea and adjudged her guilty of the offense of voluntary manslaughter. Obviously at this point there was not sufficient basis for acceptance of the plea under Supreme Court Rule 402.

At the hearing on her application for probation, the defendant testified that she was in a tavern when her husband came in and knocked her to the floor and started kicking her. She was able to persuade her husband to accompany her to their car. After he started the car, he cut the motor off and started arguing with the defendant; he began beating her again, when a stranger came up to the car and told the husband to stop. The husband told the stranger to go away, that he had a gun with him; the husband then started to go after the defendant again. Defendant by this time had reached into her purse and obtained a gun. She begged her husband not to come any closer, but when he kept coming, she fired the gun, killing him. In addition, there was testimony that the defendant had been physically abused by her husband on numerous occasions. In the course of one year, he had beaten or attacked her on eight or nine occasions. In November of 1970 he stabbed her in the back, and had bitten off her ear the year before.

The defendant pled guilty to the crime of voluntary manslaughter which is defined as:

"* * * A person who kills an individual without lawful justification * * * if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation * * *." Ill. Rev. Stat., ch. 38, par. 9—2.

Here the only factual basis which the court heard was that the shooting was with legal justification, and there was no factual basis of the essential element of the crime of voluntary manslaughter, namely, that the act was committed without legal justification. We do not reach the question here of whether defendant stated a defense, which upon trial may have been believed or disbelieved after the State had proved beyond a reasonable doubt that defendant killed without legal justification, since the only basis shown other than the State's Attorney's conclusion, was that there was legal justification.

It is obvious that the trial court could not accept the unsupported allegation of the State's Attorney that there are "exhibits and evidence available to prove the defendant guilty beyond a reasonable doubt." It is obvious that the basis of the plea was the confession of the defendant wherein she admitted committing the acts alleged in the indictment, but stated that there was some justification for the killing.

Therefore the issue is: Is a contradictory confession sufficient evidence of guilt to sustain the Supreme Court mandate laid down in Rule 402(c) when the record reflects that the defendant's recital of the facts may be inconsistent with the crime to which she is pleading?

■■ The present situation is analogous to that referred to in *Commonwealth v. Cottrell*, 249 A.2d 294 (Pa. 1969), wherein the defendant had testified at trial that he had no recollection of killing his common-law wife and that he had been drinking heavily. However, he pled guilty to the charge of second degree murder. The court held that:

"Where the accused at the time of arraignment does not know, or asserts he does not know, whether he had committed the crime, a plea of guilty to that crime should be accepted with great caution."

In this case the defendant in one breath admitted that she killed the decedent, but, at the same time, declared there was justification for doing the act. There was no further attempt made to investigate the facts in order to resolve the patently ambiguous plea. This is what was done in *Krueter v. United States*, 201 F.2d 33. There, the court questioned the defendant about the discrepancy between his plea and his protestation of innocence. A further investigation was made into the facts surrounding the case and the defendant subsequently made an unqualified admission

of guilt. The ambiguities having been resolved, the judge allowed the plea. Here, the ambiguities between the claim of justification and the plea of guilty were never resolved.

■■ Therefore, the present case closely parallels that found in *People v. Serrano*, 206 N.E.2d 330, where the New York Court of Appeals held that where the circumstances of the homicide indicated an absence of the requisite element of an intent to kill, the court erred in accepting the guilty plea without futher inquiry. The court in *Serrano* stated:

"* * * Of particular importance is the fact that, although the defendant admitted shooting and killing Bonilla, an essential element of the crime of murder in the second degree, namely, the intent to kill [citations], could not be readily inferred from the defendant's recitation of the circumstances of the killing." 206 N.E. 2d 330, 331.

"* * * [W]here * * * the trial court, before accepting the plea of guilty, properly inquires of the defendant as to the circumstances and details of the crime to which he is admitting his guilt, the mere mouthing of the word 'guilty' may not be relied upon to establish all the elements of that crime. In such case, the requisite elements should appear from the defendant's own recital and, if the circumstances of the commission of the crime as related by the defendant do not clearly spell out the crime to which the plea is offered, then, *the court should not proceed, without further inquiry, to accept the guilty plea as a valid one.*" 206 N.E.2d 330, 332. (Emphasis supplied.)

In *Bruce v. United States* (1967), 379 F.2d 113, 119, footnote 19, the court, commenting on the rationale of F.R.C.P. 11, used the following language:

"The Committee's purpose was that the court itself be satisfied of the factual basis for the plea, rather than rely exclusively on the defendant and his counsel. As the committee noted, this practice by the court avoids the possibility of a guilty plea from a defendant who fails to realize that as a matter of law his conduct 'does not actually fall within the charge'. The fear, that an innocent man may be unjustly punished, bids a court be chary before it accepts a plea of guilty filed by one proclaiming that he is not guilty."

We have stated before that many briefs filed before this court confuse "factual basis" with the requirement of Rule 402(a) (1) that the trial court determine that the defendant understands "the nature of the charge." In order to comply with 402(a), the trial court should direct inquiries to the defendant personally to be sure that the defendant under-

stands the nature of the charges against him prior to accepting the plea of guilty. However, Rule 402(c) places an additional duty on the trial judge. He should not only make sure that the defendant knows and understands what he is pleading guilty to, but the judge should determine prior to entering final judgment that the conduct of the defendant is sufficient to sustain the charge to which the defendant pleads guilty.

Defendant also contends that the trial court did not determine whether any force or threats were used to obtain the plea as required by Rule 402(b). We agree.

Although there is also a serious question as to whether the trial court complied with Rule 402(a)(1), appellant does not so contend. We therefore do not consider this question.

For the foregoing reasons this case is remanded to the trial court of Madison County with directions to permit the defendant to plead anew.

Reversed and remanded.

EBERSPACHER, P. J., and JONES, J., concur.