THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GLENN A. GOFF, Defendant-Appellant.

Fourth District   Nos. 14124, 14312 cons.

Opinion filed February 17, 1978.

Richard J. Wilson and Barbara A. Chasnoff, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul L. Stone, State's Attorney, of Sullivan, for the People.

Mr. JUSTICE MILLS delivered the opinion of the court:
This is hardly a run-of-the-mill criminal appeal.
Singular it is, and we affirm.

Goff was tried by a jury for drunk driving, convicted, then charged with perjury, sentenced to 364 days for DUI, given a competency hearing in a bench trial, found competent, immediately pled guilty to perjury, was sentenced to 14-42 months in the penitentiary, moved to vacate his plea of guilty which was denied, and this appeal ensued.

Goff enjoyed the services of three (3) different attorneys—S. John Muller for the drunk driving case, Denis J. Weber for the perjury, and Asher O. Geisler on the motion to vacate the plea of guilty.

## FACTS

Perhaps a chronology of the rather unique facts of these cases will be helpful:

| | |
|---|---|
| May 5, 1975 | Goff charged by complaint with driving under the influence of intoxicating liquor on May 2, 1975. |
| August 20, 1975 | Jury returned verdict of guilty. |
| September 24, 1975 | Goff charged by information with perjury. |
| May 7, 1976 | Public Defender withdrew as counsel and Denis J. Weber appointed. |
| June 2, 1976 | Attorney Weber petitioned to withdraw as attorney on both charges. |
| June 7, 1976 | His motion was denied. |
| July 17, 1976 | Attorney Weber's renewed motion to withdraw heard and denied. |
| August 9, 1976 | Defendant's motion to dismiss perjury charge denied. |
| August 11, 1976 | Motions in arrest of judgment, for new trial and to strike presentence investigation in DUI |

prosecution denied. Goff sentenced to 364 days and gave notice of his intention to appeal in the DUI case.

August 18, 1976
Goff waived jury in the perjury case and proceeded to competency hearing before the court and was found competent to stand trial. The State's Attorney informed court that Goff had agreed to a negotiated plea of guilty to perjury in exchange for the State's recommendation of a sentence of 14-42 months to be concurrent with the 364 day sentence in the DUI case. After the usual admonishments and compliance with Supreme Court Rule 402, the court accepted the plea of guilty. Goff waived a presentence report and was sentenced in accord with the negotiated plea agreement. Goff indicated he wished to appeal.

September 14, 1976
Goff wrote a letter to the circuit clerk requesting a new trial, alleging that he was coerced by Public Defender Denis J. Weber to plead guilty.

November 8, 1976
Attorney Asher O. Geisler, appointed by the court to represent Goff, filed a certificate stating that he had interviewed Goff at Vandalia on October 21, 1976, had examined the respective court cases herein and that he had spoken with prior defense counsel, Denis J. Weber.

November 24, 1976
Goff's motion to vacate was filed alleging (1) no factual basis for the plea of guilty to perjury, (2) he had been charged by information but had not waived his right to indictment, and (3) he had pled guilty only because he had been threatened by his counsel.

January 14, 1977
Goff's motion to vacate was heard and denied.

February 9, 1977
Notice of appeal was filed.

I.

ISSUE ONE: Was Goff *driving* on May 2, 1975? We must answer this most definitely in the affirmative. Goff and Ms. King were found by several witnesses in his car in a ditch, partially on a concrete culvert, with

the nose pointed down. Goff was sitting on the driver's side of the automobile. Witness Wooters testified that he observed the oncoming Goff car weave a bit, then go off the road and into the ditch. He turned around, returned to the scene (which only took a minute or so) and saw Goff seated behind the wheel of the car. Both Goff and Ms. King testified that *she* had actually driven the car and that they had both gotten out to look for the emergency flasher, returned to the car and that she got in first onto the passenger seat.

Trooper John Marquis, an 18-year veteran of the Illinois State Police, arrived at the scene, saw the defendant behind the steering wheel and a female in the right front seat. Trooper Marquis asked what the problem was. Goff replied that he had been run off the road by a car with bright lights, and after being asked by the trooper how fast he was driving, he replied that he was driving about 55 miles per hour.

Mr. Goff had difficulty getting out of the vehicle, was wobbly, staggering, unable to stand or walk steadily, and even bounced off the car a couple of the times while walking. The testimony showed that Goff had the odor of alcohol about him, was hesitant in answering questions, that his speech was slurred, he mumbled and jumbled his words together and appeared to the trooper to be highly intoxicated.

After being arrested for drunk driving, Goff was given certain physical tests at the Moultrie County Jail (walking a straight line, touching his nose, picking up coins)—and flunked them all.

The jury heard all of the testimony and evidence, and their finding and verdict in this regard was amply justified by the record. They obviously came to the conclusion that the defendant was behind the wheel of the car, was in actual physical control of the vehicle, and in his inebriated condition could not possibly have switched positions in the short span of about 1 minute.

We agree on issue one.

## II

ISSUE TWO: Did the court abuse its discretion in refusing to allow Goff to withdraw his guilty plea because of alleged ineffective assistance of counsel?

We think not. At the hearing on the motion to vacate the guilty plea to perjury, both defendant Goff and attorney Weber testified that a conflict existed between them and that such conflict was the basis for Weber's prior motions to withdraw, denied by the court.

Goff's version was that during a conference between them on the third floor of the Moultrie County Courthouse Goff told attorney Weber that he wanted to be protected and defended to the best of Weber's ability. Weber—according to Goff—grabbed Goff's arm and said, "I will knock

you out of the window, I'll throw you out this window," Weber drawing back his fist and telling Goff to shut up or he would throw him out the window. Goff also denied having threatened Weber's family.

Attorney Weber testified that he did, indeed, threaten Goff in the library of the courthouse. His story was that he had requested to withdraw from the case but informed Goff that he doubted that he would be allowed to withdraw. Weber then asked Goff if he still wanted him to file a motion for a competency hearing, which Weber had advised against. (Goff had also filed other motions on his own.) Whereupon Goff said to Weber:

> "Look, I am going to win this thing and you are going to win the case for me and if you don't, I have friends and when I am out of prison, I will remember where your family lives. Now this isn't a threat; this is just telling you what I am going to do."

Whereupon attorney Weber grabbed Goff by the collar and said:

> "You make that threat again and you are going right out this window."

It is interesting to note that this incident took place on July 9, 1976, after Weber's first motion to withdraw was heard and denied, and before the renewed motion to withdraw was heard.

At the conclusion of this hearing on the motion to vacate, the court found that the defendant was "a congenital liar," that "he lies when the truth would serve better," and was a "despicable lying wretch." From these observations on the record we take it that the trial judge found the defendant's story to be less than persuasive in its credibility!

Now let us compare the above recitation with the circumstances surrounding the plea of guilty entered by Mr. Goff. The record reflects that the State's Attorney's initial offers to Goff concerning a guilty plea were unacceptable to attorney Weber and he refused the proffered terms and prepared for trial. It was not until the final negotiation of the State's sentence recommendation of 14-42 months that an agreement was reached. Consequently, after the competency hearing was conducted at bench (and Goff found competent), the negotiated plea *immediately* took place. During the course of the colloquy between Judge Munch and defendant Goff, this dialogue occurred:

> "THE COURT: Have you been brainwashed or placed in a position of coercion or duress in any manner, shape or form to get you to make this plea? Has your attorney taken advantage of you, yes or no?
>
> DEFENDANT: No.
>
> * * *
>
> THE COURT: Now we have the matter of court-appointed counsel. Mr. Weber has consulted with you on various and

numerous occasions and explained the theory of your defense and advised you as to the law, is this not correct?

DEFENDANT: Yes.

THE COURT: You have confidence in his ability and the fact that he has expended in your behalf a professional job, is this correct?

DEFENDANT: As far as I understand, yes.

THE COURT: Do you have any complaint to make about that at this time?

DEFENDANT: No."

The confrontation between Goff and attorney Weber took place on July 9, 1976, more than a month after the first motion to withdraw and nearly 6 weeks prior to the above plea of guilty. And 2½ months before Goff first raised the issue in his letter to the circuit clerk on September 14, 1976.

■■ We cannot fault the trial judge for his refusal to allow the motions of attorney Weber to withdraw. Those are matters of discretion and the proper standard has not been abused here. The record reflects only that attorney Weber—in support of such motions—made general statements of "deteriorated" relationship and "personal resentment" between Goff and himself. There is no reference whatever to the incident in the county law library. And indeed it was most proper for attorney Weber to refuse to divulge such actions since it could not help but seriously prejudice the defendant before the court. Indeed, attorney Weber is to be commended for saying to the court "* * * there is [sic] a lot of matters I can't discuss with the court and I am sure the court understands that I am not privileged to reveal all our conversations * * *."

We are dealing here, of course, with a continuing question of discretion by the presiding judge. The proper standard to be applied upon a request to withdraw the plea of guilty is set forth in *People v. Spicer* (1970), 47 Ill. 2d 114, 116, 264 N.E.2d 181, 182:

"The general rule is that it is within the sound discretion of the trial court whether a plea of guilty may be withdrawn; and that this discretion will not be disturbed unless it appears that the guilty plea was entered through a misapprehension of the facts or of law, that defendant has a defense worthy of consideration, or where there is doubt of guilt of the accused and the ends of justice would better be served by submitting the case to a trial."

See also *People v. Barr* (1973), 15 Ill. App. 3d 395, 304 N.E.2d 476.

Defendant cites the case of *People v. Brown* (1976), 40 Ill. App. 3d 562, 352 N.E.2d 15, where the defendant accused his counsel of suborning his perjury at his trial, and although his counsel moved to withdraw, he continued to represent the defendant at the sentencing hearing. The Third District Appellate Court reversed and granted the defendant a new

sentencing hearing. We believe the case to be quite easily distinguished from the one at bar since we have here a negotiated plea of guilty with the defendant acknowledging to the court that his plea was voluntary, that no coercion or duress was involved, that his attorney had not taken advantage of him, that he had confidence in his ability and his professional work product, and that he had no complaint about his counsel.

We are persuaded that the trial judge did not abuse his discretion by denying the motion to vacate the plea of guilty under the perimeters drawn by *Spicer*.

### III

ISSUE THREE: Was the trial court correct in refusing to dismiss the information charging Goff with perjury since defendant did not waive indictment?

Yes it was.

■■ We entertained and disposed of this identical issue in *People v. Tibbs* (1977), 46 Ill. App. 3d 310, 360 N.E.2d 993. Defendant's contention is that proceeding against him by way of information rather than indictment is the application of an *ex post facto* law and that the right to indictment is a substantive one. Pursuant to *Tibbs* and *People v. Myers* (1977), 44 Ill. App. 3d 860, 359 N.E.2d 197, we adhere to our interpretation that the amendment to section 111—2(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—2(a)) does not involve a prohibited *ex post facto* law. The trial court was correct in denying the motion to dismiss the information on this ground.

We agree on issue three.

### MOTION TO DISMISS APPEAL

After this case was briefed and submitted to this court for disposition, the appellant was allowed to file a supplemental brief and argument and the People moved to dismiss the appeal.

■■ As to the motion to dismiss the appeal (which was taken with the case), we may dispose of that quite rapidly. State argues that Illinois Supreme Court Rule 604(d) (Ill. Rev. Stat. 1975, ch. 110A, par. 604(d)) was not complied with in that Goff's motion to vacate was not filed within 30 days of the date of sentence. That is technically true. However, 22 days after the sentence was imposed, Goff wrote the letter to the circuit clerk which was filed 4 days thereafter. The letter (to which we have referred earlier) had the effect of "tolling" the 30-day mandate under the rule. And certainly the trial judge so viewed and considered Goff's letter since he appointed new counsel for Goff for the specific purpose of filing a proper

motion to vacate. We feel, without qualm, that the only logical and reasonable view is to consider the letter in the nature of the written motion to vacate required by the rule. To hold otherwise, in our view, would be to do violence to our sense of justice. The State's motion to dismiss the appeal is denied.

### SUPPLEMENTAL ARGUMENT

Finally, we permitted the defendant to file a supplemental brief and argument in this appeal and the State an opportunity to respond thereto. Goff argues that at the time of his hearing on fitness to stand trial section 5—2—1(i) of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(i)) provided that the defendant had the burden of proving his unfitness for trial, and that the Illinois Supreme Court in *People v. McCullum* (1977), 66 Ill. 2d 306, 314, 362 N.E.2d 307, 311, held this portion of the statute "to be unconstitutional to the extent that it places on the defendant the ultimate burden of proving unfitness to stand trial."

The *McCullum* court, however, prefaced its holding with these words: "Fundamental fairness dictates that, where a defendant has raised a *bonafide* doubt as to his fitness to stand trial, the State, as a matter of due process, should bear the ultimate burden of proving defendant's fitness to stand trial."

*McCullum* involved a defendant whose attorney requested the court to conduct a hearing to determine Ms. McCullum's fitness to stand trial on a narcotics charge inasmuch as she was falling asleep in court and therefore unable to assist in the defense of her case. The trial was halted. A prehearing conference was held where the court ruled that the burden of proving fitness to stand trial under section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1) governed, and that the burden was on the defendant. A jury was then impaneled, a fitness hearing held, and the jury instructed that the burden was upon the defendant to prove herself unfit.

The Goff case is a far cry from the facts in *McCullum*. The record before us—which we have carefully culled—clearly shows that Goff waived his right to have his question of competency heard by a jury and proceeded to a bench trial. The record reflects nothing whatever of the court saying anything at all about whose burden it was to prove incompetency. The question of section 5—2—1 apparently did not even arise. The record does not reflect that there was any prehearing conference on this matter; nor was there a jury that was instructed as to the burden of proof. And it was the State who proceeded with the order of proof and witnesses after Goff was only orally in open court voluntarily

(and after proper advice) waived the jury, but also did so in writing.

The State called one witness: Dr. Steven Courtrois, a Ph.D. in counseling psychology, who testified at length. He concluded that Goff could understand the nature and purpose of the proceedings, could assist in his own defense, and that he could "reason and make judgments concerning questions and suggestions of counsel." There were no other witnesses for the State. That was the sum of all the evidence on the question of competency. The defense presented no evidence whatever. Again, the judge merely ruled: He found Goff competent to stand trial, without any reference whatever to the burden of proof on incompetence. Immediately upon his finding of competency, Judge Munch said, "Very well, let's go with the next stage, gentlemen." The State's Attorney immediately stated, "At this time the People and defense counsel on behalf of Mr. Goff have entered into negotiations which the court did not initiate." He then recited the negotiated plea which was accepted and which is now on appeal.

Clearly, the question of burden of proof under *McCullum* could not, by any stretch of the imagination, be found or read into the record as recited here. The entire incompetency proceeding before the bench followed the routine script and scenario of any criminal proceeding where a jury is waived: The State went first, produced its evidence, the defense offered none, and the court made a finding. All was without reference to any burden of proof of incompetency. It would seem to us—with pristine clarity—that *McCullum* is not applicable to this case. The question of burden is simply not here.

## FINIS

We affirm.

GREEN, P. J., and TRAPP, J., concur.