THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NICHOLAS JAMES STILLMAN, Defendant-Appellant.

Fourth District   No. 14481

Opinion filed July 7, 1978.

James L. Palmer, of Scholz, Staff & Brickman, of Quincy, for appellant.

John L. Harshman, State's Attorney, of Pittsfield (Robert C. Perry, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:

Defendant Nicholas Stillman entered a plea of guilty in the circuit court of Pike County to the offense of murder and was sentenced to 75 to 225 years imprisonment. Shortly thereafter he made a timely motion pursuant to Supreme Court Rule 604(d) (58 Ill. 2d R. 604(d)), to withdraw the plea. He appeals the trial court's denial of that motion contending that the trial court erred in (1) accepting the plea without an adequate showing of a factual basis for the plea, and (2) requiring him to carry the burden of proving his lack of fitness to stand trial when a hearing was held on that issue.

The guilty plea was entered on November 17, 1976. Prior to accepting the plea, the trial court read the information to the defendant twice. It also made separate explanations of each aspect of the charge. Defendant responded, indicating that he understood each aspect including the aspects that he had shot the victim without justification and with the intent

to kill. With reference to lack of justification, the court had explained, "In other words, you were not justified; you had no legal reason—no legal defense for having killed" the victim.

When asked for a factual basis for the plea, the prosecutor recited the explicit testimony of several nonoccurrence witnesses and then asked the court to also consider evidence of three prior statements of the defendant which had been presented at a previous hearing on a motion to suppress. Defendant and his attorney both then stated that the prosecutor's statement of what the evidence would be was correct and the defendant stated that he did, in fact, kill the victim. In each of the three statements, defendant had stated that he and Michael Thompson had driven to near the victim's residence. Thompson had been jointly charged with defendant for the murder but the charges against Thompson were severed for trial. He was convicted after a jury trial but we reversed and ordered a new trial because of error in instructions at a fitness hearing *People v. Thompson* (1978), 60 Ill. App. 3d 198, 376 N.E.2d 442.

In the first statement, defendant said that he remained in the automobile while Thompson went up to the house. He stated that he then heard shots and learned from Thompson, on Thompson's return to the car, that Thompson had shot the victim after the victim had drawn a gun. In the second statement, defendant said that he waited in the woods near the victim's house while Thompson went into the house and that both he and Thompson had guns. Defendant said that he had his because of his fear of snakes. According to this statement, Thompson later came back to where defendant was waiting. The victim followed him. Defendant fired two shots at the victim. Thereafter Thompson shot the victim at close range. In both of these statements, the defendant said that the reason the two went to the victim's house was to get some gasoline for defendant's car.

The third statement was written on paper towels while defendant was in jail. It was given to a cellmate of defendant's with directions that it be given to the press so that the public would know what really happened. Upon the cellmate's release from jail, however, he gave the statement to law enforcement officers. In the statement the defendant said that he and Thompson had been drinking and then decided to burglarize the victim's house. After driving there, defendant hid in weeds near the house while Thompson went to the house. Each had a gun. According to this statement, Thompson returned with the victim in pursuit. The victim fired once, then seeing defendant, pointed his gun at defendant who then fired, hitting the victim who fell to the ground. The two then approached the victim and Thompson fired at the victim at close range to make sure that he was dead.

■■ At sentencing, defendant gave a still different version of the occurrence. He stated that prior to the occurrence, he and Thompson had

consumed 18 cans of beer, 2 fifths of "M.D." called "mad dog" and one half pint of whiskey. He had consumed more than one-half of the intoxicants and become quite drunk. They decided to go to the victim's house to get some gasoline. Thompson went up to the house. When Thompson did not return, defendant went toward the house to investigate, taking a gun as a protection against snakes. He met Thompson coming back down the path from the house. Thompson said the victim was after him with a gun. The victim then came down the path, fired once and then aimed at defendant. Defendant then shot and hit the victim but did not shoot with the intent to kill. Thompson then went to the victim and shot him.

Supreme Court Rule 402(c) states:

> "The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." (58 Ill. 2d R. 402(c).)

The sentence is the final judgment in a criminal case where a conviction occurs. (*People v. Warship* (1974), 59 Ill. 2d 125, 319 N.E.2d 507.) Defendant's contention that no such factual basis was shown here is based upon the theories that (1) even if information is presented to the court from which a trier of fact could find a defendant guilty, the court should not accept the plea without further investigation if the information before the court gives indication of a possible affirmative defense, and (2) because the rule states a prohibition against entering a "final judgment," the court should make further investigation of a possible affirmative defense even if the information concerning such a defense comes to the court for the first time at sentencing.

Defendant's theory that the trial court has a duty to investigate is based on the decisions in *People v. Edmonds* (1973), 15 Ill. App. 3d 1073, 305 N.E.2d 346, and *People v. Troyan* (1974), 21 Ill. App. 3d 375, 315 N.E.2d 335. In *Edmonds*, a conviction of voluntary manslaughter based upon a plea of guilty was set aside when the *only* information given the court as a factual basis for the plea was that the accused killed in self-defense and therefore with justification. In *Troyan*, convictions of armed robbery and attempted murder based upon guilty pleas were set aside for improper admonishment. The defendant had not been advised as to the mental states required for the offenses. The appellate court also stated that the factual basis for the plea presented to the court was insufficient. The defendant had told the court when entering his plea that he had no recollection of the occasion because he was on drugs at the time. The opinion does not state whether other information was presented to the court indicating that, at the time, the defendant did have capacity to form the proper mental state. In *People v. Starks* (1975), 30 Ill. App. 3d 541, 333 N.E.2d 531, on the other hand, a proper factual basis for attempted robbery was ruled to have been made, although at the time of plea, the

defendant told the court that he was coerced at the point of a gun to commit the offense. Other matter presented indicated otherwise.

By the terms of section 6—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 6—3(a)) voluntary intoxication is an affirmative defense to a criminal charge if it negates the mental state required for the offense charged. The mental state for the murder charged here was intent. Defendant's claim that he was intoxicated was first made at sentencing, long after the plea was accepted. Even if statements made by a defendant at sentencing must be considered with reference to the sufficiency of the factual basis for the plea, it is noteworthy that even at that time defendant was able to give a clear account of what occurred. In *People v. Newlin* (1975), 31 Ill. App. 3d 735, 334 N.E.2d 349, and our decision in *People v. Garrett* (1977), 46 Ill. App. 3d 592, 360 N.E.2d 1231, defendants' claims that they were intoxicated at the time when they were alleged to have committed offenses requiring a mental state of intent were ruled to be insufficient to negate a sufficient factual basis for the plea when the defendants were able to give a clear account of the occurrences. The *Troyan* court also decided *Newlin* and distinguished the cases upon the basis of the difference in the defendants' ability to recall the occurrence. Here, although the defendant's versions of the occurrence changed each time he made a statement, he always purported to be able to recall the occurrence in detail. The factual basis as to the defendant's mental state was adequately shown.

■■ Defendant's theory that he acted in self-defense is based upon his contention that he fired only because the victim was pointing a gun at him and that he did so in self-defense. The first time that the defendant stated that he fired after the victim pointed a gun at him was in his third statement, the one written on a paper towel. Under the circumstances recited there, however, his shooting at the victim would not be justified because he was, at the time, participating in a forcible felony, burglary (Ill. Rev. Stat. 1975, ch. 38, par. 2—8), and the defense of the use of force in defense of his person would not have been available to him (Ill. Rev. Stat. ch. 38, par. 7—1).

In his statement at sentencing, defendant did claim that he and Thompson went to the house merely to ask for gasoline. Under those circumstances he might have been justified in firing at the victim. Even in that statement, however, he admitted that he and Thompson both carried guns and that they did, in fact, commit a burglary of the victim's house after the victim had been killed. Furthermore, for defendant to walk up to the victim who was lying on the ground and stand by while Thompson fired at the victim at close range belies a theory of self-defense. Thus, even if the defendant's statement at sentencing can be used by him in derogation of the existence of a factual basis, that statement was insufficient to do so here. In *Starks*, the defendant's statement given at the

time of the plea that he acted because of compulsion was disregarded in favor of other information indicating to the contrary. Here, the trial court could disregard the defendant's tardy statement that he shot in self-defense in favor of other information indicating to the contrary.

A line of cases including *People v. Jameson* (1944), 387 Ill. 367, 56 N.E.2d 790, and *People v. Riebe* (1968), 40 Ill. 2d 565, 241 N.E.2d 313, where no question of the sufficiency of a factual basis has been involved has ruled that a defendant should be permitted to withdraw his plea where he has a defense worthy of consideration or the correction of a manifest injustice so requires. None of them have said that withdrawal was required where a defendant merely stated a defense for the first time at sentencing and his testimony in support of that defense could be impeached by prior statements he had given.

On May 10, 1976, approximately six months prior to his entry of a plea of guilty, defendant moved for a hearing to determine his fitness to stand trial. He was required to proceed with the evidence. The only witness to testify was Dr. Cunningham, a psychiatrist appointed by the court. That doctor stated that he had interviewed the defendant for an hour and found him to be able to understand the charges against him and to cooperate with his counsel. The doctor stated that the defendant was somewhat mentally retarded and that the degree of retardation could be stated with specificity only after testing but that the test results would not change his opinion of the defendant's fitness to stand trial. The case was heard without a jury, and the court found the defendant fit to stand trial.

At the time of the fitness hearing, section 5—2—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—2—1(i)) stated that where, as here, the defendant raises the question of his competency, he has the burden of proof on the issue. As we explained in *Thompson*, the case involving the codefendant, the supreme court subsequently ruled that provision of the statute to be unconstitutional (*People v. McCullum* (1977), 66 Ill. 2d 306, 362 N.E.2d 307).That ruling was held to have retroactive effect in *People v. Hubert* (1977), 51 Ill. App. 3d 394, 366 N.E.2d 909. In *Thompson*, the trial judge followed the wording of the statute and instructed the jury that the defendant had the burden of proving his lack of fitness. Although that hearing took place before the *McCullum* decision and no objection was made to the instruction, we ruled the inadvertent action of the trial judge to be plain error and awarded a new trial.

Here, the fitness hearing was held before a different judge than the one holding the *Thompson* hearing. In *People v. Goff* (1978), 57 Ill. App. 3d 384, 373 N.E.2d 71, where a pre-*McCullum* fitness hearing was held before a court without a jury, we did not presume that the trial judge had, in his mind, imposed the soon-to-be-declared unconstitutional burden upon the defendant. We affirmed the conviction.

Here, we are spared the necessity to consider what standard the trial judge may have thought to be applicable. All of the available evidence indicated the fitness of the defendant. The examining doctor did not have the reservations expressed by the doctor examining Thompson. Where the sole evidence is that the defendant is fit to stand trial, a directed verdict of fitness is appropriate. (*People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208, *rev'd on other grounds* (1971), 403 U.S. 946, 29 L. Ed. 2d 855, 91 S. Ct. 2279.) Such would have been the situation here if the case had been before a jury. Because the court had no factual determination to make, it was immaterial where he might have placed the burden of proof in making that factual determination.

Finding that no reversible error occurred in the competency hearing, the acceptance of the guilty plea or the denial of the motion to withdraw the plea, we affirm.

Affirmed.

CRAVEN and TRAPP, JJ., concur.