THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES KIFER, Defendant-Appellant.

Fifth District   No. 78-395

Opinion filed August 14, 1979.

KARNS, J., concurring.

Jeff M. Plesko, of State Appellate Defender's Office, of Mt. Vernon, for appellant.

William A. Schuwerk, Jr., State's Attorney, of Chester (Raymond F. Buckley, Jr., and Stephen J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GEORGE J. MORAN delivered the opinion of the court:

Defendant appeals from a judgment of the circuit court of Randolph County finding him guilty of the crime of battery and sentencing him to 6 months' imprisonment at the Vandalia Correctional Center.

While this appeal was pending and while defendant was still incarcerated, the defendant through the office of the State Appellate Defender made a motion for an expedited appeal and a motion to proceed by memorandum instead of a brief. The State Appellate Defender stated the defendant would be likely to serve his full sentence before this court could hear the defendant's appeal unless the defendant's appeal was expedited.

This court granted defendant's motion to expedite and after reading defendant's memorandum and a transcript of the record in this cause entered an order granting defendant bond on his own recognizance. However, the defendant was released from confinement because he had completed his sentence the day this court granted him bond.

We find it unfortunate that the trial court did not grant defendant bond pending appeal in this case. We also find it unfortunate that many other trial courts do not grant defendants bond pending appeal in misdemeanor cases. The result of this practice is that many, if not the majority, of those who are sentenced because of misdemeanor convictions serve their time before this court can review their appeals. Thus defendants in many, if not most, misdemeanor cases are deprived of their right to appeal which is guaranteed them by the constitution of this State.

On June 26, 1978, the defendant was charged with the crime of battery by information filed by the State's Attorney of Randolph County. The information charged that defendant without legal justification, intentionally caused bodily harm to Martha Kifer in that he struck her in the mouth with his fist. A warrant of arrest was issued and defendant's bail was set in the amount of $2500.

The defendant was arraigned before the circuit court of Randolph County.

The trial court instructed the defendant on the elements of the charge of battery, the defendant's right to a lawyer, his right to a trial by jury and his right to call witnesses in his behalf.

The following are some exchanges between the trial court and the defendant:

"Court: Are you ready this morning to enter a plea of either guilty or not guilty to the charge?

Defendant: Yes, sir.

Court: Do you have any questions before you enter that plea?

Defendant: I don't have a question. I like to tell you what happened.

Court: In that case, sir, if you have no questions, how do you wish to plead to the charge of battery?

Defendant: I am pleading guilty. Can I explain what happened?

Court: Just a moment, sir. I am going to ask if you wish to plead guilty that you sign a written plea of guilty.

Defendant: Friday afternoon she wanted to drop these charges, but she couldn't get ahold of the right person to do it because she called back down to the jail and she said it didn't do any good.

Court: The only thing I can say—

Defendant: You don't know this. I am just saying we talked to each other on the phone Friday about it twenty-five minutes.

\* \* \*

Court: Do you still wish to plead guilty, sir?

Defendant: I want to plead guilty because I want to get this over with. It's hard for me to get a job and I do have a job.

\* \* \*

Court: If you want to plead guilty, sir, I need you to sign where I marked on there with an X. Sir, would you tell me in your own words what happened.

Defendant: I was driving my own car down the highway. I had taken her out to see about a house. She is house hunting. We live in a two room apartment and that's too crowded. We was going out towards Red Bud and we kept arguing about this and that and I asked her to quiet down; she was making me nervous driving. So she kept it up this and that and finally she called me a name and I don't think anybody likes to be called, I'll tell you the name if you want to know, a nigger. She called me a black nigger and she no more than said it and I like that, my niece was sitting here and she was sitting next to the door—

Court: You indicating you hit her with the back of your hand?

Defendant: Back of my hand. Wasn't no fist.

Court: She was seated next to you—

Defendant: My niece and then my sister.

Court: In the front?

Defendant: In the front seat next to the door and she said this and that and I just turned the car around and brought her back to where her car was.

Court: Was there any type of damage that was done to her.

Defendant: Her lip was a little bit blue. Nothing like she is putting in or this damage or whatever you want to call it.

\* \* \*

Court: Where do you work at, sir?

Defendant: I work for Leonard Gross at the orchards on Route 3.

Court: How long have you worked there?

Defendant: Since March.

Court: Is that full time work?

Defendant: That's full time. Only time I don't work is in rain.

Court: What do you do there? Do you pick the fruit?

Defendant: Well, fruit coming about the end of this month. About the fifteenth of this month.

Court: Did you work last week?

Defendant: Up until I got arrested, yes. My mind is all messed up. They came out and picked me up.

Court: Where do you live at here in the community?

Defendant: I live out there at the orchard. I got a truck and camper. My address is here in town.

\* \* \*

Court: Do you have any recommendations?

[Ass't State's Atty.]: Yes, Your Honor. In light of Mr. Kifer's past problems in Pennsylvania and due to the fact he's only been in Illinois a short time and during this time his sister has continually been a problem and at odds with each other, been in our office twice resulting in this charge, we are going to recommend, Your Honor, Mr. Kifer receives 364 days at Vandalia.

Defendant: Please—

Court: Is there anything you have to say?

Defendant: Please don't do that to me. I beg the Court don't do that to me.

Court: Do you know anything at all about his work at the orchard?

[Ass't State's Atty.] I haven't talked to anybody out there.

Defendant: Give me weekends if you want me to do jail time, but I don't want to go to prison. I will even do weekends for you. I requested my sister be here, but the court was to have been at one o'clock today. She would have been up here at one o'clock.

Court: Where did you get the idea, Mr. Kifer, it was set for one o'clock?

Defendant: The Sheriff downstairs. He said I would be taken up one o'clock this afternoon. He told me that three days ago and that's why I was surprised when I went up this morning.

\* \* \*

Court: Mr. Kifer I am going to sentence you to the Department of Corrections. It will not be though for a period of one year.

Defendant: Can't you give me a break, sir?

Court: It will be for a period of six months.

Defendant: I will lose my job, my truck and car and everything I got in the whole world. I lose everything. I come out and then I turn around and I have nothing to do. for again. I got nothing. That's why I am trying to get to you this morning, try to explain to you my education is about fifth grade education and you know how hard it is for a person with college education to get a job.

Court: You have a right to appeal, sir, to appeal.

Defendant: I ain't appealing, Your Honor, but I am tired of being misused. I am being misused this morning by what you just said there, six months. I am being misused.

Court: There is a procedure that you have to follow—

Defendant: I tell you, I want somebody I don't care who to get me hold of my sister and I want to talk with her person to person, not telephone. Face to face.

Court: If you wish to listen, I am going to explain to you the process that you have to follow if you wish to appeal.

Defendant: I don't care—

Court: First of all, you cannot directly appeal the decision. There is a procedure, you have to file your notice of appeal and that's what I want to explain. First of all, you have thirty days from today's date in which to ask that you be allowed to withdraw your plea of guilty to the charge—

Defendant: I withdraw it right now at this moment.

Court: That has to be in writing.

Defendant: I'll write it.

Court: And you have to state each and every reason why you feel—

Defendant: Because I am being misused in this courtroom in Chester, Illinois.

\* \* \*

Court: You have the right, sir, if you are unable to afford an attorney to a court-appointed lawyer to represent you.

Defendant: I want to see one right now.

Court: Also you would be entitled to a free transcript of the proceedings this morning if you are unable to pay for it. Do you understand that?

Defendant: I want that too. There's been some lies told in this courtroom this morning by that man there.

Court: You referring to the Assistant State's Attorney?

Defendant: Yes, I am. You got false statement over there on that teletype."

The foregoing exchange between the trial court and the defendant convinces us that the trial court committed error in several respects in this case.

First, it was an abuse of discretion to sentence the defendant to 6 months imprisonment for such a minor offense. The only statement the trial court had before it concerning the nature of the offense came from the defendant who stated that he struck his sister with the back of his hand under extreme provocation. In our opinion, this did not call for such an extreme sentence.

Next, it is clear that the defendant did not really understand the nature of the proceeding in that he did not expect a prison sentence for this minor infraction of the law. This conclusion is buttressed by many statements in the record where he told the court that he was in a hurry to get back to work.

The trial court also violated Supreme Court Rule 402(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 402(c)) which provides:

"(c) Determining Factual Basis for Plea. The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea."

This case is similar to the case of *People v. Edmonds* (1973), 15 Ill. App. 3d 1073, 305 N.E.2d 346. In *Edmonds* the defendant admitted that she killed the man in one breath, but at the same time declared there was justification for doing the act. In this case the defendant admitted striking his sister, but denied striking her in the manner charged in the information. In addition, he stated that he hit his sister after extreme provocation. If his statement is true, we find it hard to perceive how any jury or any court sitting without a jury would find the defendant guilty.

■ We now must consider what to do with this case. Should we remand it to the trial court to permit the defendant to plead anew, or should we reverse it outright? It would not be just to remand this case for a new hearing. Assuming he was guilty as charged in the information, he has now served his time. He also probably lost his job and his trailer.

For the foregoing reasons the judgment of the circuit court of Randolph County is reversed.

Reversed.

KUNCE, J., concurs.

Mr. JUSTICE KARNS, concurring:

I concur in the decision reached as I too believe it was an abuse of

discretion to sentence the defendant to six months imprisonment for such a minor offense, simply a family squabble; however, I believe the plea proceedings were otherwise proper and in substantial compliance with Supreme Court Rule 402(c).

I do not concur in the broad language used by the majority, which would apparently establish a rule that all convicted misdemeanants are entitled to bond on appeal without regard to their prior record or the facts and circumstances of the particular case.