**UNITED STATES of America ex rel. George PHILLIPS, Petitioner,**

v.

**Michael LANE, Director, Illinois Department of Corrections, and Steven Hardy, Warden, Menard Psychiatric Center, Respondents.**

No. 83 C 6817.

United States District Court, N.D. Illinois, E.D.

Feb. 29, 1984.

Bruce Mosbacher, Asst. State Appellate Defender, Steven Clark, State Appellate Defender, Chicago, Ill., for petitioner.

Sally L. Dilgart, Asst. Atty. Gen., Neil Hartigan, Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM OPINION

PRENTICE H. MARSHALL, District Judge.

George L. Phillips has filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 (1976). In 1978, he was found guilty of murder by a judge of the Circuit

Court of Cook County, Illinois and was sentenced to a term of 100 to 200 years in the penitentiary.[1] Phillips was convicted of the May 1972 murder of a Chicago attorney. The adjudication of guilt is in no way implicated in the habeas petition. Rather, petitioner challenges in two respects the procedure used by the state trial court relating to the question of his competency to stand trial.

We take our initial summary of the facts relevant to the petition from the state appellate court's opinion affirming petitioner's conviction, *People v. Phillips*, 110 Ill. App.3d 1092, 66 Ill.Dec. 729, 443 N.E.2d 655 (1982), though we will fill out those facts with references to the record. Petitioner was indicted for murder in June 1974. He immediately filed a motion asking the court to order a psychiatric examination. On July 25, 1974, Dr. E.J. Kelleher, Director of the Psychiatric Institute of Cook County, examined petitioner and found him fit to stand trial. On August 15, 1974, petitioner moved to be examined by a different psychiatrist, Dr. Werner Tuteur of Elgin State Hospital in Elgin, Illinois. The court granted the motion. Dr. Tuteur conducted an examination; the appellate court found, however, that he did not file a report with the court. On November 13, 1974, petitioner's attorney, an assistant public defender, filed a petition for a competency hearing. The petition was verified by petitioner's lawyer, and it stated in part that "petitioner [the lawyer] ... represents that the said defendant herein has been examined by Dr. Werner Tuteur, 750 South State, Elgin, Illinois, and their [sic] diagnosis is: The defendant, GEORGE PHILLIPS, is unfit to stand trial." R. C25. On November 19, the court ordered Dr. Tuteur to conduct a reexamination of petitioner. R. C26. The state appellate court stated that Dr. Tuteur did not file a report concerning this examination.

On April 9, 1975, the trial court ordered Dr. Richard Rappaport to conduct a competency and sanity examination, since "[t]here appear[ed] to be a dispute as to the competency of the defendant to stand trial...." R. C29. Dr. Rappaport reported on April 16 that in his opinion petitioner was feigning mental illness and that he was fit to stand trial. R. C30–31.

On August 11, 1975, the trial court held a hearing on petitioner's motion to suppress several statements he had made to the police while in custody. The motion to suppress was denied.

According to the appellate court, over the next 15 months, petitioner was examined by psychiatrists four more times. Dr. Tuteur again found petitioner unfit to stand trial, but other psychiatrists from the Psychiatric Institute disagreed. In November 1976, a fitness hearing was held. Petitioner was found unfit to stand trial and was remanded to the custody of the Department of Mental Health for treatment.

Over the following 15 months, petitioner was examined four times by Psychiatric Institute psychiatrists, all of whom reported him to be competent to stand trial. The state requested a fitness restoration hearing. The hearing was held on February 15, 1978. Two psychiatrists testified for the prosecution, and Dr. Tuteur testified for petitioner. The jury found petitioner competent to stand trial.

Petitioner alleges that it was unconstitutional for the trial court to hold a hearing on the motion to suppress before holding a hearing on his competency to stand trial. He also asserts that the trial court incorrectly allocated the burden of proof at the fitness restoration hearing. Petitioner and respondents have filed cross motions for summary judgment.[2] No evidentiary material has been filed other than the state court record. Neither party has requested

---

1. Petitioner is currently incarcerated at the Menard Psychiatric Center in Menard, Illinois.

2. Under habeas rule 11, 28 U.S.C. § 2254 rule 11, the Federal Rules of Civil Procedure apply except where inconsistent with the habeas rules. The rule governing summary judgment, Fed.R. Civ.P. 56, is not inconsistent with any of the habeas rules.

an evidentiary hearing under 28 U.S.C. § 2254 rule 8.

## THE APPELLATE COURT'S DECISION

The appellate court rejected both of petitioner's contentions. With respect to petitioner's first argument, the court noted that under Illinois law, if a *bona fide* doubt exists concerning a defendant's fitness to stand trial, "the court shall order that a determination of that question be made before further proceedings." Ill.Rev.Stat. ch. 38, § 1005-2-1(c) (1981), quoted in *People v. Phillips*, 110 Ill.App.3d at 1101, 66 Ill. Dec. at 735, 443 N.E.2d at 661. The court stated that "the only notice given to the court before the hearing on the motion to suppress was one sentence in the petition for a competency hearing, an unsupported claim by defense counsel that a Dr. Tuteur had found defendant unfit for trial." *Id.* Since Dr. Tuteur had never filed a report with the court, the only evidence before the court at the time of the suppression hearing was a series of reports stating that petitioner was competent to stand trial. *Id.*

The appellate court held that defense counsel's "mere assertion . . . that he ha[d] reason to believe defendant [was] incompetent" was insufficient to create a *bona fide* doubt as to petitioner's fitness. *Id.* at 1101–02, 66 Ill.Dec. at 735, 443 N.E.2d at 661 (citing cases). Thus, the trial court's failure to hold a fitness hearing was not erroneous.[3]

Petitioner also argued before the appellate court that the trial court had at the restoration hearing improperly allocated the burden of proving him fit to stand trial. The appellate court first noted that since he had not tendered an alternative jury instruction at the hearing or objected to the instruction given, petitioner had waived the right to raise the issue on appeal unless the giving of the instruction amounted to "plain error." *Id.* at 1099, 66 Ill.Dec. at

734, 443 N.E.2d at 660. *See* Ill.Rev.Stat. ch. 110A, § 615(a) (1981). The waiver would bar petitioner from raising the issue unless there was "grave error" or the evidence was closely balanced. The court held that no grave error existed because "the jury was properly instructed that defendant could be found fit only if the State had proved that fact by a preponderance of the evidence." 110 Ill.App.3d at 1099, 66 Ill.Dec. at 734, 443 N.E.2d at 660. Other material added to the instruction, the court stated, "did not unconstitutionally shift the burden of proof to defendant." *Id.* Counsels' closing arguments also reflected the correct burden of proof. Thus, the court found that no "plain" or "grave" error existed in the instruction. *Id.* at 1100, 66 Ill.Dec. at 734, 443 N.E.2d at 660.

With respect to the second part of the waiver exemption, the appellate court held that petitioner's "claim that the evidence was closely balanced [was] without support," given the long series of reports confirming petitioner's competence and the "mitigation" of Dr. Tuteur's testimony by Tuteur's statement that his conclusion of unfitness would not change even had he learned that in other examinations, petitioner appeared to be simulating mental illness. *Id.* Thus, since there was no "grave error" and the evidence was not closely balanced, the court held that petitioner "waived his right to claim reversible error based on faulty jury instructions." *Id.*

## THE SUPPRESSION HEARING

A person accused of crime enjoys the constitutional guarantee of not being tried if he "lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense . . . ." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 903, 43 L.Ed.2d 103 (1975); *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960) (per curiam). "[This] prohibition is fundamen-

---

3. The appellate court also noted that petitioner had not requested a fitness hearing before the suppression hearing or suggested that one should be held. 110 Ill.App.3d at 1102, 66 Ill. Dec. at 736, 443 N.E.2d at 662. The court apparently did not construe the November 1974 request for a competency hearing as being a request that such a hearing precede the motion to suppress.

tal to an adversary system of justice." *Drope*, 420 U.S. at 172, 95 S.Ct. at 904. This guarantee is protected by the requirement that if sufficient doubt exists of the accused's competence to stand trial, the trial court must *sua sponte* inquire into his competency. *Drope; Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

■ In the present case the trial court failed to inquire into petitioner's competency before conducting the suppression hearing in August 1975. Though *Drope* and *Pate* both concerned the accused's competency at trial, we think that the procedural guarantee established by those cases applies to a pre-trial suppression hearing as well. Since the suppression hearing in this case concerned the circumstances under which petitioner made various statements to the police, it was crucial to his defense that he be able to cooperate with counsel at the hearing. The Confrontation Clause of the sixth amendment requires that the accused be present at "all stages of the proceedings where fundamental fairness might be thwarted by his absence." *Faretta v. California*, 422 U.S. 806, 816, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975). Where a hearing turns on "substantial issues of fact as to events in which [the accused] participated," his presence is required. *United States v. Hayman*, 342 U.S. 205, 223, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952). Thus, a defendant has the right to be present at a pretrial suppression hearing where testimony is to be taken or facts established. *See United States v. Hurse*, 477 F.2d 31, 33 (8th Cir.), *cert. denied*, 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973); *United States v. Dalli*, 424 F.2d 45, 48 (2d Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 39, 27 L.Ed.2d 49 (1970). The Supreme Court has suggested that one source of the right not to be tried if incompetent is the ban against trials *in absentia*. *Drope*, 420 U.S. at 162, 95 S.Ct. at 899 (citing Foote, "A Comment on Pre-Trial Commitment of Criminal Defendants," 108 U.Pa.L.Rev. 832, 834 (1960) and *Thomas v. Cunningham*, 313 F.2d 934, 938 (4th Cir.1963)). Thus, if a suppression hearing of the type held in petitioner's case is a proceeding at which petitioner had a right to be present, it was also a proceeding that could not go forward if he was shown to be unable to cooperate with his attorney or understand the nature of the proceeding.

■ The Supreme Court had avoided establishing a standard describing the amount of doubt necessary to trigger a judge's duty to hold a competency hearing. *See Drope*, 420 U.S. at 172–73, 95 S.Ct. at 904. The Seventh Circuit has described the standard as one of *bona fide* doubt or whether the facts known to the trial judge are such as to create a reasonable doubt as to the competency of the accused. *United States ex rel. Rivers v. Franzen*, 692 F.2d 491, 497–98 (7th Cir.1982). The standard in other circuits is similar. *See, e.g., Scarborough v. United States*, 683 F.2d 1323, 1324 (11th Cir.1982), *cert. denied*, — U.S. —, 103 S.Ct. 1225, 75 L.Ed.2d 460 (1983); *Brown v. Warden*, 682 F.2d 348 (2d Cir.), *cert. denied*, 459 U.S. 991, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982); *Acosta v. Turner*, 666 F.2d 949, 954 (5th Cir.1982); *Chavez v. United States*, 656 F.2d 512, 515–16 (9th Cir.1981); *Durham v. Wyrick*, 545 F.2d 41, 44 (8th Cir.1976). Where a habeas petitioner seeks relief on the basis of the state trial court's failure to hold a competency hearing, he bears the burden of persuading the habeas court that the facts known to the trial judge were sufficient to raise a *bona fide* doubt as to petitioner's competency. *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir.), *cert. denied*, 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979). The focus is on "what the trial court did in light of what it knew." *Reese*, 600 F.2d at 1091.[4]

Petitioner's case was initially assigned to Judge Suria. R. C1 (docket or "half sheet"). Petitioner's motion for a psychiatric examination, filed August 15, 1974, was granted by another judge, Judge Dolezal, on that date. R. C23, 24 (motion and order); C1 (docket). On November 13, 1974,

---

**4.** The Seventh Circuit referred to *Reese* with apparent approval in *Rivers,* 692 F.2d at 496–97.

petitioner's attorney filed a "petition for competency hearing" before Judge Suria, which as we have noted stated that Dr. Tuteur had found petitioner unfit to stand trial. R. C25. Judge Suria's docket entry for that date reflects that the petition was "entered and filed." R. C1.

■ There is nothing in the record suggesting that the appellate court's finding that Dr. Tuteur's 1974 reports were not filed is incorrect. Petitioner states in his memorandum filed with this court that the reports were mailed to the presiding judge but were not filed by that judge. This cannot be determined from the reports themselves. Unlike the reports of Drs. Lorimer, Kelleher, Kaplan and Rappaport, see R. C105, 106, 116, 121, Dr. Tuteur's report, see R. C107 (report from examinations of September 21 and October 14, 1974), is not in the form of a letter to counsel or the trial judge, and it does not state the date on which it was prepared. We do not know when the report was made a part of the record now before us. The appellate court's finding is one of historical fact and is entitled to a presumption of correctness under 28 U.S.C. § 2254(d) (1976). Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The only exception to this presumption that conceivably applies might be that "the material facts were not adequately developed at the State court hearing." 28 U.S.C. § 2254(d)(3). For the present we will presume the correctness of the state court's finding that Dr. Tuteur's report was not before the court at the time of the suppression hearing.

On November 19, 1974, six days after petitioner's attorney filed the motion for a competency hearing, Judge Suria ordered another examination by Dr. Tuteur. Again, no report appears to have been filed. On February 6, 1975, Judge Suria ordered an independent psychiatric examination, "[t]here appearing to be a dispute as to the disability of defendant." R. C28. There is no record of whether this examination occurred and if so, what the result was. Judge Suria entered another similar

order on April 9, 1975, ordering Dr. Rappaport to examine petitioner. R. C29. On April 29, Judge Suria entered an order reflecting that Dr. Rappaport's report had been submitted. R. C32. The report stated that Dr. Rappaport found petitioner fit to stand trial. R. C30–31.

On July 7, 1975, petitioner's attorney filed a motion to bifurcate the trial so that the question of his sanity at the time of the offense would be determined only after a jury had found that he in fact committed the offense. R. C33. The docket reflects that the motion was "entered and filed." R. C2.

On August 4, the parties appeared before Judge Robert Sulski. R. C3. We do not know why the case was transferred to a different judge. There is no record as to what the parties told Judge Sulski, if anything, about the progress of the case to date. On the next court date, August 7, Judge Sulski set the previously filed motion to suppress for hearing on August 11. R. C3.

The hearing on the motion to suppress took two days, August 11 and 12. Petitioner was still represented by the attorney who had, some 9 months earlier, filed the motion for a competency hearing. The record of the suppression hearing does not reflect that any mention was made of the motion for a competency hearing or of petitioner's competency. Nor has petitioner referred to anything in the record that would show he behaved oddly during the hearing.

After the evidence on the motion to suppress was closed, the state filed a motion asking the court to order a psychiatric examination of petitioner to determine his sanity at the time of the offense. The motion said nothing about petitioner's competency to stand trial. R. C41. Judge Sulski ordered Dr. Kelleher to conduct an examination. R. C42. The record reflects that this motion was discussed by counsel and the judge in open court. The prosecutor, noting that petitioner's answer to discovery stated that petitioner intended to

raise an insanity defense at trial, stated that

> [w]hile there have been psychiatric reports returned with respect to George Phillips, most of them did not in fact directly concern the issue of insanity at the time of the offense. Most of them were required and in fact solicited for the purposes [sic] of determining the defendant's competency to stand trial.
>
> I would at this time submit to your Honor a motion for a psychiatric examination of the defendant for the purpose of determining said defendant's sanity at the time of the offense ....

R. 110. In responding to the motion and the prosecutor's comments, petitioner's attorney made no reference to the issue of petitioner's competency to stand trial. *See* R. 109–20. The judge did not inquire into that issue either.

Putting aside for a moment petitioner's unsupported allegation that Dr. Tuteur's 1975 report was mailed to the court, the only "evidence" of petitioner's incompetency that was part of the record was the petition for a competency hearing, in which petitioner's lawyer stated on oath that Dr. Tuteur had found petitioner unfit to stand trial. We do not know whether Judge Sulski was aware of the lawyer's representation as to Dr. Tuteur's finding. The petition had been filed when the case was before Judge Suria. Though Judge Sulski might have had the docket (or "half") sheet before him, that document reflected only that a petition for a competency hearing had been filed; it did not refer to the contents of the petition. R. C1. Nor, as we have noted, is there anything suggesting that petitioner's attorney *ever* mentioned the petition or the issue of competency to Judge Sulski. The only evaluation report actually in the record, based on the state appellate court's findings, was that of Dr. Rappaport finding petitioner competent to stand trial. And even when the prosecutor mentioned, after the suppression hearing had concluded, the earlier competency examinations, petitioner's lawyer did not take the bait and raise the issue of his client's competency.

Even if, as petitioner suggests, the appellate court's finding concerning Dr. Tuteur's report was incorrect, petitioner argues only that the report was sent to the court. At the time Dr. Tuteur conducted the examination, Judge Suria was presiding over the case. Petitioner has at no time suggested that Judge Suria made the report part of the record; indeed, petitioner's claim is that the judge did not do so. Thus, even if Dr. Tuteur sent his report to the court, there is no indication, even in petitioner's argument, that it was before Judge Sulski when he conducted the suppression hearing.

■ The Supreme Court noted in *Drope* that "judges must depend to some extent on counsel to bring issues into focus." Even were we to assume that Judge Sulski was aware of the *contents* of the petition for a competency hearing, an assumption not supported by the record now before us, he also would have had before him the later report of Dr. Rappaport finding petitioner fit to stand trial. A reasonable judge would be justified in concluding, in light of petitioner's failure to raise the issue before the suppression hearing or even when psychiatric examinations were discussed after the hearing, that no question of competency existed. *See Johnson v. Estelle*, 704 F.2d 232, 238 (5th Cir.1983) (trial judge did not err in failing to raise issue of fitness *sua sponte* where he was unaware of any prior medical opinion suggesting unfitness and where accused's demeanor did not suggest incompetence). Thus, the trial court did not commit constitutional error in failing to raise the competency issue *sua sponte*.

■ We do not, by making this holding, impermissibly find that petitioner waived the competency issue. The Supreme Court has expressed serious doubt that the right to inquiry into the issue can be waived, since a waiver by one who is incompetent cannot possibly be knowing and intelligent. *Pate*, 383 U.S. at 384, 86 S.Ct. at 841; *Drope*, 420 U.S. at 176, 95 S.Ct. at 906. However, there is no constitutional require-

ment that a trial judge raise the competency question *sua sponte* in every case; rather, some objective fact must exist that would cause a reasonable person to question whether the accused is competent. In this case, one of the crucial matters overlooked by petitioner is that the judge who conducted the suppression hearing was not the same judge who received the motion for a fitness hearing. There is nothing suggesting that the judge whose failure to raise the fitness question is attacked here was in any way aware of Dr. Tuteur's conclusion as to petitioner's competency, let alone his reasons for reaching that conclusion. Thus, at the time the suppression hearing was held no *bona fide* doubt existed as to petitioner's fitness.[5]

In a footnote in his memorandum in support of the habeas petition, petitioner notes that he argued in the state courts that he did not receive the effective assistance of counsel, in part due to counsel's failure to bring the competency question before the judge conducting the suppression hearing. Memorandum in Support of Petition for Writ of Habeas Corpus at 19 n. *. The state appellate court rejected this claim without directly addressing the suppression hearing matter. *People v. Phillips*, 110 Ill.App.3d at 1104–05, 66 Ill.Dec. at 737, 443 N.E.2d at 663. Petitioner did not raise the question in his habeas petition. While we do not foreclose petitioner from amending the petition to allege ineffective assistance of counsel, for the present we note only that the issue is not properly before the court and has not been briefed or discussed by the parties. Thus, we will not consider it for the purpose of the present motions. We note, however, that since Judge Suria's November 1976 finding that petitioner was unfit to stand trial was based on the reports of Dr. Tuteur, such a claim would appear on its face to be rather compelling.

■ Finally, petitioner argues that based on the finding of unfitness in November 1976, the trial court should have *sua sponte* raised the question of petitioner's competence some 15 months earlier at the suppression hearing. In *Drope* the Court held that even if the evidence before trial would not have warranted *sua sponte* inquiry into the defendant's competence to stand trial, the testimony of defendant's wife at trial relating to his need for medical care, combined with an attempt by defendant at suicide during the trial, was sufficient to require further inquiry. *Drope*, 420 U.S. at 178–82, 95 S.Ct. at 907–09. The present case is different, however, in that petitioner claims that the trial court should have inquired into his fitness at the suppression hearing not on the basis of facts that came to light during that hearing but rather on the basis of facts that came to light over one year later. In *Rivers*, the Seventh Circuit addressed a similar claim. The petitioner in *Rivers* was tried after a psychiatrist found him competent to stand trial. 692 F.2d at 493. He was found guilty in January 1973, and sentencing was set for later February of that year. At the sentencing hearing, petitioner's lawyer moved to suspend sentencing in order that inquiry into petitioner's competency to be sentenced

---

5. *Acosta v. Turner*, 666 F.2d 949 (5th Cir.1982) and *United States ex rel. Mireles v. Greer*, 528 F.Supp. 1122 (N.D.Ill.1981), relied upon by petitioner, are distinguishable. In *Acosta*, the court noted that colloquy between the trial court and counsel at a pretrial hearing "evidence[d] that the competency issue had not been resolved at that point" and that the trial judge's appointment of psychiatrists one day after conviction to determine the petitioner's competency to be sentenced "indicate[d] that the question was still open at the time of trial." *Id.* at 955. Thus, in *Acosta*, the trial judge himself was aware of the competency question and considered it unresolved. In *Mireles*, an initial psychiatrist's report finding the accused unfit was followed by

two reports finding him fit. The accused testified at trial that he heard voices, and the evidence at trial showed that he had attempted suicide several times. The court granted a writ of habeas corpus, holding that the facts presented to the trial court, including petitioner's irrational behavior following the offense, the initial psychiatric report of unfitness, and uninterrupted psychiatric care up to the date of trial, were sufficient to raise a bona fide doubt as to petitioner's competence despite his lawyer's desire to go to trial. *Id.* at 1124. In the present case, by contrast, no medical reports indicating unfitness were before the court, nor was there any evidence of irrational behavior by petitioner either before or during the suppression hearing.

could be made. *Id.* In late March, a psychiatrist who had examined petitioner reported that he was not competent to be sentenced; this prompted a motion to vacate the conviction, since in the view of petitioner's attorney the March finding cast doubt on petitioner's fitness to stand trial some 2½ months earlier. The court then ordered another examination; the same doctor reported that petitioner had been competent to stand trial. Finally, in January 1974, petitioner was found by a psychiatrist competent to be sentenced. In April 1974, the court held a hearing limited to petitioner's competency to be sentenced, and it found him competent and sentenced him. On appeal and in his habeas petition, petitioner argued that the post-trial evidence of his incompetency required the trial court to reexamine his competency to stand trial.

The *Rivers* court, in addressing petitioner's claim, distinguished between the "substantive" question of incompetency and the "procedural" *Pate-Drope* right of inquiry into competence. The court noted that a criminal defendant was entitled to assert his actual incompetence at trial in a subsequent collateral proceeding based on post-trial evidence. 692 F.2d at 497 n. 3 (citing *Reese v. Wainwright,* 600 F.2d 1085, 1093 (5th Cir.), *cert. denied,* 444 U.S. 983, 100 S.Ct. 487, 62 L.Ed.2d 410 (1979)). It held, however, that *Pate* did not apply where the evidence of incompetency did not exist until after trial:

> "[A] *Pate* violation is a procedural error by the trial court and it may occur only in the time frame encompassed by the trial itself and immediately related proceedings." [*Reese,* 600 F.2d] at 1093.

The Supreme Court in *Drope* emphasized the narrow holding of *Pate* and its principal concern with the creation of procedural rules designed to detect incompetence and ensure a fair trial. As stated in *Drope,* the issue is whether "in light of what was then known, the failure to make further inquiry into petitioner's competency to stand trial, denied him a fair trial." In this case, the post-trial evidence of alleged incompetency did not retrospectively render an otherwise fair trial in violation of due process. Ordinarily, "one cannot fault a trial court judge for failing to determine a question that he has no reason to believe is in issue."

*Id.* at 496, 497 (citations omitted).

*Rivers* concerned post-*trial* evidence of unfitness; here we are concerned with post-*suppression hearing* evidence. We think the considerations are the same. The finding of unfitness 15 months after the suppression hearing did not retrospectively trigger a duty in the trial court to hold a *Pate* hearing concerning the already decided motion to suppress.[6]

## THE RESTORATION HEARING

Petitioner argues that the trial court incorrectly instructed the jury as to the burden of proof at the February 1978 restoration hearing. In *United States ex rel. Bilyew v. Franzen,* 686 F.2d 1238, 1244–45 (7th Cir.1982), the Seventh Circuit held that the constitution requires the state to bear the burden of proving that the accused is fit to stand trial once the issue of unfitness has been properly raised. The court appears to have accepted other decisions hold-

---

**6.** This does not mean that petitioner would be barred from challenging his actual fitness at the suppression hearing. He has not raised such a challenge in his habeas petition. In his brief on appeal in the state court, the pertinent argument heading referred only to the need for a determination of fitness. In that section of the brief, however, petitioner's appellate attorney argued that "a new suppression hearing should have been held before trial after the ... finding that

the defendant was fit." Brief and Argument for Defendant-Appellant at 49. He also noted, however, that "it appears that Mr. Phillips was unfit at the time of the suppression hearing." *Id.* The appellate court did not address this argument. Since petitioner does not make it here, we need not determine whether it has been properly presented to the state courts. *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971).

ing that the state's burden need only be that of preponderance of the evidence. *Id.* at 1238–39 (citing *United States v. DiGilio,* 538 F.2d 972, 988 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977); *United States v. Makris,* 535 F.2d 899, 906 (5th Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977)). Before we address the merits of petitioner's constitutional claim, however, we must determine whether it is properly before this court.

Petitioner's lawyer at the restoration hearing[7] neither objected to the jury instructions in question nor tendered alternate instructions of his own. Respondents thus argue that petitioner has waived his constitutional challenge to the instructions due to a procedural default. In *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court held that the failure to object to a jury instruction is a default that bars a habeas petitioner from objecting to the instruction on constitutional grounds absent a showing of cause for the failure to object and prejudice from the default. *See Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

Petitioner concedes that he did not contemporaneously object to the instruction. He argues, however, that this case falls within an exception to the waiver doctrine. In *County Court of Ulster County v. Allen,* 442 U.S. 140, 152–53, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1977), the Court held that if the reviewing state court does not rely on the waiver of a constitutional claim but goes beyond the alleged waiver to rule on the merits, the cause-and-prejudice standard of *Sykes* and *Isaac* does not apply, and the federal habeas court can address the merits of the claim. *See also United States ex rel. Williams v. Franzen,* 687 F.2d 944, 951 (7th Cir.1982). The Court reaffirmed *Allen* in *Isaac. Engle v. Isaac,* 456 U.S. at 135 n. 44, 102 S.Ct. at 1575 n. 44.

In the present case, the Illinois Appellate Court initially stated that by failing to object to the instruction, petitioner had waived the right to raise the issue on appeal unless the giving of the instruction amounted to "plain error." *People v. Phillips,* 110 Ill.App.3d at 1099, 66 Ill.Dec. at 734, 443 N.E.2d at 660. After discussing the two alternative ways in which the instruction could amount to plain error, *see* discussion at p. 842 *supra,* the court held that petitioner had "waived his right to claim reversible error based on faulty jury instructions." *Id.* at 1100, 66 Ill.Dec. at 734, 443 N.E.2d at 660. Ordinarily this would end matters, for as the Supreme Court stated in *Isaac,* a federal court "should not rely upon a state plain-error rule when the State has refused to apply that rule to the very sort of claim at issue." *Isaac,* 456 U.S. at 135 n. 44, 102 S.Ct. at 1575 n. 44. However, we think that the manner in which the state court applied the plain error rule permits us, under the *Allen* rule, to hear petitioner's constitutional claim.

■ The appellate court stated that the first test of plain error was whether "grave error" had been committed.[8] It stated that petitioner had argued that grave error had occurred "in that the burden of proof was unconstitutionally shifted to the defense." *Id.* at 1099, 66 Ill.Dec. at 734, 443 N.E.2d at 660. The discussion that followed clearly shows that the court evaluated the instructions in constitutional terms:

Here, the jury was properly instructed that defendant could be found fit only if the State had proved that fact by a preponderance of the evidence. Although we agree that omission of the second portion of the instruction would have been preferable, the additional information *did not unconstitutionally shift the burden of proof to the defendant. Also, the opening and closing statements by both the prosecution and de-*

---

**7.** Petitioner was represented by a private attorney, Cornelius Toole, Esq., at the fitness hearing and at trial.

**8.** This may well be a tautology. It is, however, the way in which the state court applied the test.

*fense reflect the recognition that the burden of proof was on the State. Accordingly we find no plain error in the instruction given.*

*Id.* at 1099–1100, 66 Ill.Dec. at 734, 443 N.E.2d at 660 (emphasis supplied). Thus, the court's holding that no plain error occurred incorporated a holding that no constitutional error had occurred.

The purpose of the *Sykes-Isaac* rule is to give the state courts an opportunity to remedy constitutional wrongs in the first instance. *Sykes*, 433 U.S. at 90, 97 S.Ct. at 2508 (the rule will make the state trial the "main event"); *Isaac*, 456 U.S. at 128–29, 102 S.Ct. at 1571–72 (noting that where no objection has been raised in the state courts, "the trial court has had no opportunity to correct the defect and avoid problematic retrials," and "[t]he state appellate courts have not had a chance to mend their own fences and avoid federal intrusion"). The purposes of the rule are therefore satisfied where the state appellate court has addressed a habeas petitioner's constitutional claim on its merits and rejected it.[9] The appellate court did so in petitioner's case. We therefore may consider petitioner's claim.[10]

The trial court gave the following instructions relating to burden of persuasion:

Your decision must be arrived at upon the preponderance of the evidence. In other words, you will decide the issue of the defendant's fitness or unfitness to stand trial by the greater weight of the evidence.

A person is unfit to stand trial, if because of a mental or physical condition, he is unable:

One, to understand the nature and purpose of the proceedings against him; or,

Two, to assist in his defense.

.    .    .    .    .

After considering all of the evidence in this case, if you are convinced by a preponderance of the evidence that this defendant is unfit to such an extent that he does not understand the nature of the charge against him, or that he is unable to co-operate with his lawyer in a proper defense of the case, you will find by your verdict that the defendant was at the time of the impaneling of this jury and now is, unfit to stand trial.

On the other hand, if you find from the preponderance of the evidence that the defendant in this case understands the nature of the charge and is able to cooperate with his lawyer in a proper defense of his case, you will, by your verdict, find that the defendant was at the time of the impaneling of this jury and now is fit to stand trial.

R. 236–37, 239.

■■■ The appellate court stated that "the jury was properly instructed that defendant could be found fit only if the State had proved that fact by a preponderance of the evidence." *People v. Phillips*, 110 Ill. App.3d at 1099, 66 Ill.Dec. at 734, 443 N.E.2d at 660. That statement was plainly incorrect. The state court *never allocated* the burden of persuasion. It never informed the jury that the state bore the burden of proof as to fitness. All the trial court did was to give the standard. It *identified* the burden; it did not place it.

---

**9.** *Sykes* also justified the waiver rule by stating that where the habeas petitioner has, under a state procedural rule, waived a claim, "adequate state grounds" exist for affirming the conviction. 433 U.S. at 81–83, 86–87, 97 S.Ct. at 2503–04. This would be true, however, only where the state court has declined on state procedural grounds to address a defendant's federal constitutional claim. Where the claim has been addressed and rejected, there is no state procedural law ground on which the federal court can justify not examining the federal constitutional claim.

**10.** Petitioner has not in any event argued that the cause-and-prejudice standard is met here. We would suggest that an appealing argument could be made along those lines.

In light of our resolution of the waiver issue, we need not address petitioner's argument that the "fundamental fairness" "exception" of *Isaac*, 456 U.S. at 135, 102 S.Ct. at 2506, applies here, or his argument that waiver principles cannot apply to issues of the incompetence of an accused.

Indeed, a fair reading of the instructions might lead one to believe that the court placed the burden of persuasion on petitioner. After instructing the jury that the question of fitness or unfitness would be determined "by the greater weight of the evidence," the court next defined the issue in terms of *un*fitness. This might have suggested to a reasonable juror that the fact that must be found by a preponderance of the evidence was unfitness. That would amount to allocating the burden of persuasion to the defendant. Moreover, in the final part of the instruction, when explaining the preponderance standard, the court began its explanation by stating that the jury should find petitioner unfit "if ... convinced by a preponderance of the evidence that [he] is unfit." Only afterward did the court state that a finding of fitness was mandated if the jury found petitioner fit by a preponderance of the evidence. All of this suggests, absent a clear allocation of the burden of persuasion in a manner not done here, that petitioner bore the burden. This alone would mandate issuance of a writ of habeas corpus under *United States ex rel. Bilyew v. Franzen*, 686 F.2d 1238 (7th Cir.1982).

Respondents argue that since the final part of the instructions stated that if the preponderance weighed in favor of fitness, fitness should be the jury's finding, no constitutional error occurred. Respondents' theory is that, in light of the final instruction, the only way that the jury's finding could be inaccurate is if the evidence were in equipoise. Respondents argue that the evidence was nowhere near that point but rather that it weighed heavily in favor of a finding of fitness. It is unclear whether respondents mean by this argument that no constitutional error was committed or that any constitutional error was harmless. Either way, the argument is meritless.

A similar argument was made in *Bilyew*. In that case, the Illinois Supreme Court had held that the allocation of burden of proof in a fitness hearing "becomes significant in a given case only when the evidence is so nicely balanced that neither fitness

nor unfitness is established by a preponderance of the evidence." *People v. Bilyew*, 73 Ill.2d 294, 302, 22 Ill.Dec. 736, 739, 383 N.E.2d 212, 215 (1978), quoted in *United States ex rel. Bilyew v. Franzen*, 686 F.2d at 1244. The Seventh Circuit addressed the argument as one of harmless error, stating,

> [w]e doubt the soudness of the [theory] that concludes that an unconstitutional burden of proof can be disregarded unless the trial judge has made a point of stating that he or she has relied upon it.... When the trial judge is informed by the prosecution that the relevant statute places the burden of proof on the defendant ..., then we certainly cannot presume, as did the Illinois Supreme Court, that she did not rely on it.

*Id.* at 1246. The court went on to note that where the finder of fact is a jury, as in the present case, one cannot know from the verdict whether the burden of proof was decisive. *Id.* (citing with approval *People v. Hubert*, 51 Ill.App.3d 394, 399, 9 Ill.Dec. 398, 402, 366 N.E.2d 909, 913 (1977) (Bua, J.) ("A court of review may not properly speculate as to what result the trier of fact, whether a judge or jury, would have reached had the burden of proof been allocated differently."). The *Bilyew* court also debunked the "equipoise" argument in a lengthy appendix to its opinion, which we need not repeat here. *Id.* at 1247–48.

The state court never informed the jury that the state bore the burden of proof, and its instructions could reasonably be interpreted as stating exactly the contrary. The instructions were therefore violative of due process. Respondents' "equipoise" theory, be it an argument on the constitutional merits or on the question of harmless error, is foreclosed by *Bilyew*. Thus, under *Bilyew* our only remaining duty is "to examine the hearing record to determine whether there is a reasonable possibility that [petitioner] would have been found unfit had the State been given the burden of proving him fit." *Bilyew*, 686 F.2d at 1246.

Three psychiatrists testified at the fitness hearing, two for the state and one, Dr. Tuteur, for petitioner. The state's first witness, Dr. Gerson Kaplan, had examined petitioner in December 1977 and on February 1978. He did not review Dr. Tuteur's reports before examining petitioner. Kaplan testified that before examining petitioner the first time, he walked by the waiting room where petitioner was waiting approximately eight times. On each occasion, he observed petitioner talking in a normal fashion with the others in the room. His facial expression was "animated." R. 160–62. On the basis of his two examinations, he determined that petitioner was "malingering." R. 164. He did not believe that petitioner was suffering from schizophrenia. R. 165. He diagnosed petitioner as suffering from an "antisocial personality." Id. Though due to inartful questioning Dr. Kaplan did not give his opinion as to whether petitioner could understand the charges against him, he did state that petitioner was able to cooperate with counsel. R. 165–66. On cross examination, petitioner's attorney established that petitioner had a history of using drugs and attempting suicide and that he had been confined to Manteno State Hospital. R. 174–75.

The state's second witness was Dr. Robert Reifman. He had examined petitioner in March 1977. He did not review Dr. Tuteur's report before examining petitioner. R. 181. He testified that petitioner communicated with him in a rational and factual manner and understood the nature of the charges against him. R. 182. Reifman also testified that in his opinion, petitioner was able to cooperate with counsel. R. 183. Like Dr. Kaplan, Dr. Reifman did not believe that petitioner was suffering from schizophrenia; rather, he testified that in his opinion petitioner had a "narcissistic personality." R. 183. On cross-examination, petitioner's attorney established that in 1958, petitioner had been evaluated for psychiatric disorder due to serious behavioral problems, that he had a history of setting fires while a child, and that he had been confined in mental institutions in the late 1960's or early 1970's. R. 187–89.

Dr. Tuteur testified for the defense. Since the issue for our determination is whether there was a reasonable possibility that a properly instructed jury might have found petitioner unfit, we will review his qualifications briefly. Dr. Tuteur received his medical training in Germany in the 1930's. He came to the United States in 1936, and performed three residencies in psychiatry in the early 1940's. R. 197–98. He served as chief of psychiatry for the military hospitals in South Asia during World War II. R. 198. He was board certified in psychiatry in 1951. R. 198–99. He testified that he was a psychiatric consultant to the Federal District Court for this district. R. 200. He maintains his private practice in Elgin, Illinois. Id. He examined petitioner six times, on September 21 and October 14, 1974, on August 30, 1975, on September 11, 1976, on June 25, 1977, and on February 6, 1978, all pursuant to court orders. R. 201. On the basis of each examination, he concluded that petitioner was unfit to stand trial. He explained at length why he did not believe that petitioner was malingering. R. 203–04.

On cross examination, Dr. Tuteur testified that Dr. Kaplan's testimony as to petitioner's "normal" behavior in the waiting room did not change his opinion as to petitioner's unfitness. R. 210. His reason for this was that based on his examinations, he was sure that he was not dealing with a malingerer. He also stated that it was possible for one with schizophrenia (his diagnosis of petitioner) to have "remissions to states of improvement, temporary improvement which is followed by relapse which I think may have happened in this case." R. 212.

■ We do not think, on the basis of the above evidence, that the improper instruction was harmless beyond a reasonable doubt. Dr. Tuteur's long experience in the field of psychiatry precludes a conclusion, at least in the course of harmless error analysis, that petitioner was plainly able to fool Tuteur while not fooling the

other testifying psychiatrists. Tuteur had examined petitioner more times than both of the state's witnesses together, and one of his examinations came only one week before the restoration hearing. He was able to explain why he did not believe petitioner to be a malingerer. It is not our province to determine which side's testimony was more credible. Dr. Tuteur's testimony was supported sufficiently that there is a reasonable possibility that a properly instructed jury might not have found petitioner fit to stand trial.[11]

## CONCLUSION

For the reasons stated above, respondents' motion for summary judgment is granted as to the claim relating to the suppression hearing and is otherwise denied. Petitioner's cross motion for summary judgment is denied as to the suppression hearing but granted as to the restoration hearing. Since petitioner may wish to amend the petition to allege ineffective assistance of counsel, we will defer entry of judgment and issuance of the writ for two weeks to permit petitioner to determine what course he wishes to follow.

---

**11.** To the extent that the state appellate court's statements as to the weight of the evidence in evaluating the second part of the "plain error" test, *see* discussion at p. 842 *supra*, might be considered the equivalent of "harmless error" analysis, the question of harmless error is not an unmixed question of fact such that the § 2254(d) presumption of correctness applies to the state court's findings. In any event, the legal standard applied by the state court— whether the evidence was "closely balanced"—is not the same as the harmless error standard.